OPINION OF THE COURT
Eve Preminger, J
Defendant was charged with burglary, petit larceny and *35 criminal mischief arising from alleged incidents in complainant’s apartment on two separate occasions. After a preliminary hearing before another Judge, the felony charges were reduced and the matter held for trial. Defendant now moves for discovery of complainant’s medical records and for a psychiatric examination of the complainant.
The complainant, John Graham, is a 54-year-old disabled veteran. At the preliminary hearing, he testified that he had suffered brain injury during World War II. As he put it, "the rockets came and messed up my brains and paralyzed me.” He also testified that he could not remember certain things such as the dates of the alleged incidents or how long he had lived in his present apartment; that he could not think "too good” and gets "mixed up”; and that he is not able to follow questions "too fast.”
On the whole, his testimony was confused, frequently tangential, and sometimes contradictory, although a picture of the underlying incidents did emerge. On the day in question, he answered a knock on his door, thinking it was the television repairman whom he had called for earlier. Instead, several people pushed him aside and came into his apartment whereupon they stole his food, money and phonograph records.
He changed his testimony several times as to how many people were involved and who they were. He became confused also about how they had entered the apartment, sometimes saying they entered through the door and at other times through the window, and finally stated that he could not remember.
At another point he testified that he could not see very well and that he was half blind. Later during cross-examination, he testified that he had not been wearing his glasses on the day in question. At this point, he called the District Attorney over and whispered something to him. Upon defense counsel’s objection, the District Attorney told the court that the complainant admitted to him that the reason he had said he was half blind was due to the fear that defendant’s friends might throw lye in his face.
Subsequent to the hearing, defense counsel’s investigation revealed that complainant had been hospitalized at Marlboro Psychiatric Hospital in New Jersey and that psychiatric evaluations were performed on him at Veteran’s Administration *36 Hospital. Defendant now seeks to compel production of those records.
 Due process considerations require the disclosure to an accused of evidence favorable to him which is material to guilt or punishment (Brady v Maryland, 373 US 83). It is recognized that "[t]he jury’s estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence” (Napue v Illinois, 360 US 264, 269); and accordingly, courts have required disclosure of evidence tending to affect the credibility of a particular witness (Napue v Illinois, supra; Jencks v United States, 353 US 657; Levin v Katzenbach, 363 F2d 287; People v Rosario, 9 NY2d 286, cert den 368 US 866).
Evidence of the mental illness of a witness is a fact that a jury is entitled to know so that it may "assess and evaluate the testimony given by him and not accept it * * * as the statement of a 'normal’ individual” (People v Rensing, 14 NY2d 210, 213-214). This is so because such evidence bears "not only upon the * * * general trustworthiness” of the complainant but also upon "the reliability of his specific testimony” (Simos v Gray, 356 F Supp 265, 270).
The postconviction discovery of evidence of a witness’ mental condition has been sufficient to order a new trial in several instances (People v Maynard, 80 Misc 2d 279; People v Rensing, supra). In Maynard, the People had refused defendant’s request for the criminal record of the key prosecution witness which would have led to evidence of the witness’ mental commitment for a prior ongoing mental condition. The court held that the suppression was a violation of due process under Brady v Maryland (supra), because the witness, who was uncontradicted, must have played a crucial role in the jury’s verdict and, therefore, evidence of his aberrant mental condition would have been material on the question of the defendant’s guilt.
In Rensing, the codefendant, who had testified against defendant, was certified insane after the trial on the basis of a long-standing mental condition. It was essential that a jury be made aware of such evidence so that it would be in a position to evaluate testimony and, accordingly, a new trial was ordered.
The major issue in this case involves the reliability of the complainant who is the sole eyewitness to the alleged crime. The preliminary hearing illustrates the complainant’s difficulty in recollecting events and communicating to others his *37 perceptions and observations of those events. He claims this difficulty is due to brain damage. The only information that defendants now have is that complainant was once hospitalized and has been the subject of psychiatric evaluations. The medical records can aid the defendant, the prosecution, and ultimately the jury, in determining the proper weight to be accorded the complainant’s testimony (People v Parks, 41 NY2d 36).
Where, as here, there is knowledge of a long-standing, ongoing mental condition of a complainant who is the sole eyewitness to the crime, and where such condition may affect the accuracy, perception and comprehension of his testimony, evidence must be disclosed to the defendants concerning such a condition.
The People argue that since this is a pretrial motion and the cases cited above involved posttrial motions for a new trial on the ground that the conviction resulted from the testimony of a witness whose mental state is later discovered to be questionable, there are no grounds for disclosure at this time. That argument cannot succeed. The basis for reversal was that the evidence was so material to the issue of guilt or innocence that it would play a part in the jury’s consideration. Since the same kind of evidence regarding the prosecution’s key witness has been uncovered prior to trial and will be an issue at trial, the time is even more appropriate for disclosure so that the evidence can be put "to most significant use” (People v Maynard, 80 Misc 2d at p 289, supra).
In ordering the disclosure, this court is merely applying the established principle of admitting extrinsic evidence of a witness’ mental defect or deficiency to impeach his credibility, including the admission of hospital records (Ellarson v Ellarson, 198 App Div 103; United States v Pugliese, 153 F2d 497. See, also, Juviler, Psychiatric Opinions as to Credibility of Witnessess: A Suggested Approach, 48 Cal L Rev 648, 651-55).
Nor can disclosure be precluded by a claim of privilege. The statutory rule prohibiting the disclosure of communications between a patient and his physician is subject to waiver (CPLR 4504, CPL 60.10). A patient may waive his privilege either expressly by testifying in detail as to his injury or illness (Hethier v Johns, 233 NY 370) or voluntarily disclosing his condition (Apter v Home Life Ins. Co., 266 NY 333); or impliedly by conduct (People v Preston, 13 Misc 2d 802). The complainant has already testified that he suffers from brain *38 damage which impairs his thinking and communication abilities. This was a voluntary statement and qualifies as a waiver regarding further inquiry into his mental condition.
In addition, the State’s policy interest in protecting the confidentiality of the physician-patient relationship must yield to the mandate of constitutional due process considerations when the need for disclosure is present (People v Maynard, 80 Misc 2d 279, supra; Davis v Alaska, 415 US 308). (See, also, People v Mandel, 61 AD2d 563.)
Accordingly, the defendant’s motion for discovery of the medical records is granted.
Defendant’s motion for a pretrial psychiatric examination of the complaining witness is a more unusual request. There is no express rule in New York authorizing such a procedure. In fact, the standard of competency of a witness is defined by CPL 60.20 which also authorizes the trial court to determine the issue. However, recent cases have held that the trial court may utilize psychiatric testimony as an aid in its determination (People v Parks, 41 NY2d 36, supra; Aguilar v State of New York, 279 App Div 103), and may even order a pretrial psychiatric examination of a witness (United States v Benn, 476 F2d 1127; State v Butler, 27 NJ 560; United States v Klein, 271 F Supp 506, affd sub nom. Hamilton v United States, 433 F2d 526; Ballard v Superior Ct. of San Diego County, 64 Cal 2d 159).
The power to make such an order stems from the trial court’s "inherent power to conduct those inquiries necessary to a full and fair adjudication” (United States v Benn, supra, p 1130, n 12; Ex Parte Peterson, 253 US 300; 9 Wigmore, Evidence [3d ed], § 2484). However, the power to order an examination is within the discretion of the trial court (United States v Benn, supra; State v Butler, supra), which must remain mindful of the potential dangers accompanying such an order. "For example, a psychiatric examination may seriously impinge on a witness’ right to privacy * * * the examination itself could serve as a tool of harassment; and the impact of all these considerations may well deter the victim * * * from lodging any complaint at all” (United States v Benn, supra, p 1131). (See, also, United States v Butler, 481 F2d 531, 534.) The need for an examination must, therefore, be balanced against the dangers incident to an individual case and an order will be made only where there is a substantial *39 showing of need and justification (State v Butler, supra; United States v Klein, supra).
There are only a few cases where courts found that the requisite showing had been made and ordered an examination (State v Falcetano, 107 NJ Super 375; State v Franklin, 49 NJ 286). In Falcetano, the court held that where a homicide victim’s son, who had been indicted with defendant but turned State’s evidence, had exhibited signs of traumatic shock, including attacks on his mother in the presence of police officers and the repetition of that violence after he was originally pulled away by an officer, an examination should be ordered. The court in Franklin ordered a psychiatric examination of the main prosecution witness in a murder trial where the witness had once been committed to a hospital for the insane.
The facts in the instant case do not at this time demonstrate the need for an examination that was so apparent in the above cases. This is not a murder case, nor is this complainant’s behavior as bizarre or violent as the conduct of the witness in Falcetano. Complainant is an elderly man who alleges he has been harassed in the past. Requiring him to submit to a psychiatric examination might well serve as a further harassment. Admittedly, his testimony was confused and contradictory, but more than that is necessary to provide the requisite showing for such an order, particularly when the psychiatric records may be sufficient to apprise all parties of the exact nature of complainant’s medical condition and its possible effect on his credibility.
Accordingly, the defendant’s motion for an order directing the complainant to submit to a psychiatric examination is denied without prejudice to renewal of the motion in the event additional facts arise creating a substantial showing of need and justification.