OPINION OF THE COURT
Harvey Glasser, J.
The defendant is charged with sexual abuse in the third *505 degree (Penal Law § 130.55) and endangering the welfare of a child (Penal Law § 260.10 [1]). The defendant has brought a supplemental motion for an order to compel the District Attorney to produce the "psychiatric, mental health and/or special education records” of the complainant, who is a 14-year-old remedial student at a special education high school.
The defendant does not allege that any specific type of information would be found in the complainant’s school files or other records. The request is said to be based on a conversation with "a representative of the Special Education Department” of the New York City Board of Education who informed defense counsel that a remedial student in the special education program "could be experiencing any number of problems ranging from emotional and psychological disorders, to learning disabilities”, and that all such students undergo "a series of psychological and social worker evaluations” administered by the Board of Education.
The defendant claims such records are Brady material, arguing that once the People have "hinted” at the existence of any mental or emotional condition, the defendant and the jury are entitled to know of any such condition so as to be able to evaluate the witness’ credibility and ability to perceive and recall facts.
The People counter that they do not possess or have control over any of complainant’s educational records, and, thus, they have no obligation to turn them over. Further, it is asserted, such records are privileged, and, in any event, that conversations with the complainant and his mother reveal that he has a learning disability, not "mental problems”. Moreover, the mother is adamant about protecting the complainant’s privacy; she would not even reveal the name of his school.
This case presents the novel issue of whether the defendant, without making a showing that it is reasonably likely that the records in question will be relevant or material, may be granted access to the records of psychological and social worker evaluations of the complainant performed by the special education program of the New York City Board of Education.
The defendant does not allege that the records contain any prior statements by the complainant to psychologists or social workers employed by the Board of Education regarding the incident being charged. Thus, the defendant explains that this is not a request for Rosario material. (Rosario held that the *506 defense is entitled to the prior statement of a witness "[a]s long as the statement relates to the subject matter of the witness’ testimony and contains nothing that must be kept confidential” [People v Rosario, 9 NY2d 286, 289 (1961)].) Instead, the defendant claims that, having made a specific and relevant request, he is entitled to the complainant’s records because they are exculpatory material, pursuant to Brady.
Brady v Maryland (373 US 83, 87-88 [1963]) held that the prosecution may not suppress any evidence favorable to the accused if it is material to either guilt or punishment. "It is equally true that '[w]hen the "reliability of a given witness may well be determinative of guilt or innocence”, nondisclosure of evidence affecting credibility falls within this general rule.’ ” (People v Cwikla, 46 NY2d 434, 441 [1979], quoting Giglio v United States, 405 US 150, 154.)
Although a witness with a mental disease or defect is not automatically disqualified from testifying, where a key witness has a mental illness, the jury must be allowed to consider that illness to properly assess and evaluate the testimony given. (People v Rensing, 14 NY2d 210, 212 [1964] [defendant was entitled to a new trial after it was discovered that the codefendant, the only witness to implicate defendant, had been suffering from a "longstanding mental illness”, because the jurors had been misled into accepting the testimony as that of a normal person].)
This, of course, does not mean that all complainants or witnesses who testify against the defendant in a criminal proceeding must be exposed to having all their medical, personnel, school, and/or other records open to the scrutiny of defense counsel in case some information may surface that could be used to impeach the testimony of that witness.
The courts have recognized that where privileged, or even very personal, information is requested by the defense, a "tension exist[s] between the rights of an accused to confront and cross-examine adverse witnesses and the interests of every witness to be free from having his private life made an 'open book’ ” (People v Grosunor, 108 Misc 2d 932, 940 [Crim Ct, Bronx County 1981]). There is a public interest in encouraging those reporting crimes to come forward (supra, at 939-940). " 'If every witness faced the prospect of having his entire privileged personal life examined by counsel and then paraded before the public, we would find ourselves looking long, hard and perhaps fruitlessly’ ” for those who would *507 come forward to testify (supra, at 940, quoting People v Has-son, 86 Misc 2d 781, 784-785 [Sup Ct, Richmond County 1976]). "Indeed, entitlement to access [to privileged files] on no more than a bare allegation that the inspection is sought as fodder for an untracked attack on credibility would render the principle of confidentiality meaningless for all practical purposes.” (People v Gissendanner, 48 NY2d 543, 549-550 [1979].)
Where the key prosecution witness has had a history of mental illness, the courts have held that the confidentiality of the physician-patient relationship must yield to the defendant’s constitutional due process rights. (See, People v Maynard, 80 Misc 2d 279 [Sup Ct, NY County 1974]; People v Lowe, 96 Misc 2d 33 [Crim Ct, Bronx County 1978].)
In People v Maynard (80 Misc 2d 279, 284, supra) the verdict was set aside because the prosecution withheld or failed to seek out evidence of the principal identifying witness’ "long and continuous history of psychiatric treatment and commitment” and sexual degeneracy. Because the mental condition brought into question the witness’ "accurateness, perception, truthfullness and susceptibility to suggestion”, without knowledge of the condition the . jury could not have properly evaluated the testimony (supra, 80 Misc 2d, at 288).
Similarly in People v Lowe (96 Misc 2d 33), at the preliminary hearing the complainant, who was the sole eyewitness, testified that he had suffered brain injury during World War II, and that he had difficulty thinking and remembering. Subsequently, it was discovered that the complainant had been hospitalized in a psychiatric hospital and that psychiatric evaluations had been performed on him at a Veterans’ Administration hospital. The court ordered disclosure of the medical records.
Both Maynard and Lowe (supra) considered the fact that there is a statutory privilege prohibiting disclosure of communications between a physician and a patient. Although Lowe held that the complainant had waived the privilege by testifying in detail as to his condition (supra, 96 Misc 2d, at 37-38), the court reasoned in the alternative that the State’s interest in protecting the physician-patient relationship must yield to constitutional due process considerations when "the need for disclosure is present” (supra, at 38). Similarly, Maynard held that the privilege had to give way to the "constitutional” considerations involved in the Brady materials (supra, 80 Misc 2d, at 279). However, in the cases where disclosure was *508 required the defense knew that the chief prosecution witness had a history of serious mental illness, usually involving hospitalization for that illness. In the instant proceeding, there is only speculation that the complainant may possess some condition that would affect his ability to perceive, remember or relay events he observed, based only upon the fact that he is a special education student.
When a student is referred for special education, a committee on special education must initiate an evaluation including "at least a physical examination * * * an individual psychological examination, a social history and other suitable examinations and evaluations as may be necessary to ascertain the physical, mental and emotional factors which contribute to the suspected handicapping conditions.” (8 NYCRR 200.4 [b] [1].) The People have not asserted a specific privilege that protects such evaluations. (The People are advised to take notice of People v De Jesus, 69 NY2d 855 [1981], discussed below.) The court recognizes that CPLR 4507 creates a psychologist-client privilege and CPLR 4508 creates a social worker-client privilege. These sections are incorporated by reference in CPL 60.10. Further, Education Law § 4005 (1) (e), governing placement and evaluation of children, states that "[a]ny information obtained from a committee on special education pursuant to this section shall be considered confidential in accordance with regulations of the commissioner”. Thus, the complainant’s communications with any social worker or psychologists employed by the Board of Education and any records kept of such treatment are privileged.
In the instant motion the defendant has not challenged the right of the People to assert any privilege on behalf of the complainants. In People v Ellman (137 Misc 2d 946 [Crim Ct, Bronx County 1987]), the defendant, by subpoena, directed the complainants to produce their tax returns for several years. The court held that the Attorney-General possessed standing to move to quash the subpoenas, reasoning that the complainants should not have to retain private counsel to protect their interests (supra).
The complainant in People v Grosunor (108 Misc 2d 932 [Crim Ct, Bronx County 1981], supra) was an employee of the Department of Social Services (DSS). The defendant subpoenaed her employment records, which the legal division of DSS delivered to the court without objection. The court held that the District Attorney had no standing to move to quash the subpoena, since it would violate local law, which designated *509 the Corporation Counsel as the agency’s attorney (supra, at 934-935). Nonetheless, the court acted to protect the confidentiality of the complainant by finding that the public interest required a qualified privilege for the protection of personnel records, of public and nonpublic employees, and by ordering an in camera inspection of the records, where the court would redact material that was immaterial or irrelevant (supra, at 937-938). Accordingly, this court deems that the privileges in question herein have been sufficiently asserted.
When the Court of Appeals has had occasion to consider what would constitute a valid exception to the social worker-client privilege created by CPLR 4508, it has been in the context of requests for Rosario material. In People v Tissois (72 NY2d 75 [1988]) the defendant claimed the right to examine statements made by the child sex crime victims to a social worker employed by the Brooklyn Society for the Prevention of Cruelty to Children, maintaining that the statements were Rosario material. The Court of Appeals held that, since the privilege of CPLR 4508 was invoked, the burden fell on the defendant to demonstrate the applicability of an exception, which the defendant had failed to do. The court explained that it "ha[d] no occasion to decide what circumstances, if any, would sufficiently overcome the statutory barrier to disclosure” (supra, at 79). (In the other Court of Appeals case in which the People attempted to invoke the social worker-client privilege to prevent access to the complainant’s account of the incident to a Bureau of Child Welfare social worker, the matter was not decided on the merits. At trial, the Assistant District Attorney failed to preserve the issue for appeal because he did not cite the specific statutory privilege involved, CPLR 4508. [People v De Jesus, 69 NY2d 855 (1987), supra.])
In the instant matter, in balancing the defendant’s “6th Amendment rights to cross-examine an adverse witness and his right to any evidence material to the issue of guilt or innocence as set out in Brady, with the countervailing public interest in keeping certain matters confidential or privileged” (People v Ortiz, 127 AD2d 305, 308 [3d Dept 1987]), this court finds that the defendant has not made a sufficient showing to be entitled to access to the complainant’s records. However, to protect the interests of the defendant, the court will conduct an in camera inspection of the complainant’s special education psychological and social evaluations to determine whether they contain anything that is material and relevant, pursuant to Brady and its progeny. If so, such material will be turned *510 over to defense counsel. Such a solution is consistent with the decisions of virtually every court that has faced an analogous dilemma. (See, e.g., People v Ortiz, supra, 127 AD2d, at 308 ["Whenever this dilemma unfolds, the proper course of action for a court to take is to conduct an in camera examination of the evidence to determine whether the relevancy of the evidence outweighs the need for confidentiality”]; see also, People v Chambers, 134 Misc 2d 688 [Sup Ct, NY County 1987] [in camera inspection conducted of murder victim’s diary].)
Accordingly, defense counsel is directed to draft a judicial subpoena duces tecum, for court endorsement, directed to the special education program of the Board of Education. The subpoena, which will be returnable before the Judge in AP5, will call for the production of all psychological and social assessments of the complainant, to be placed in a sealed envelope.