OPINION OF THE COURT
John M. Leventhal, J.
Defendant by way of indictment is charged with various crimes, inter alla, assault in the first degree and assault in the second degree.[1] It is alleged that on July 11, 1997 the defendant had thrown boiling hot water at the complainant, Hiu Cheng, with the intention of causing her serious physical injury.[2]
Defendant came into possession of a tape of a telephone conversation occurring sometime in the spring of 1998 between the complainant and one Derrick Bo Wan. The defendant alerted the court and the People of the tape’s existence at an appropriate juncture in the proceedings and in fact supplied the tape to be copied by the People. The defendant stated his intention to introduce the tape or a translated transcript of the same.[3] The People maintain that the tape is the result of illegal eavesdropping and should be suppressed. (See, CPLR 4506.)[4]
Since it is alleged that the defendant is the one to have conducted the illegal eavesdropping of complainant’s telephone *739 conversation, the court directed the defendant to show how the tape was received by him.[5]
FINDINGS OF FACT
The defendant testified on his own behalf.[6] The complainant and Detective Investigator Steven Christopher Nieves testified for the People.
Defendant’s testimony was as follows:
Defendant has been married to the complainant for eight years. They lived together in a ground floor apartment in a three-family home at 190 Bay 23rd Street, in Brooklyn. After the defendant was arrested on the charges herein on July 11, 1997, he never returned to 190 Bay 23rd Street until November 1997 due to the issuance of a protective order. The defendant then was granted visitation of his daughter by the Family Court at his brother’s basement apartment also at 190 Bay 23rd Street. The defendant during one of these visits in either February or March 1998 asked his wife to retrieve some of his belongings and to bring them downstairs to his brother’s apartment. The complainant told defendant to come up and to get his own belongings.
The defendant went upstairs to his wife’s apartment, took some clothes and removed from a drawer his Social Security card, a deed to the house, credit cards and four tapes. This was done in the presence of his wife. Two of the tapes were of music and two were micro-cassette tapes from the answering machine. The defendant put the items other than clothing in a plastic bag and brought them down to his brother’s basement apartment. The defendant continued to play with his daughter for two hours. He then went home to his apartment in Chinatown.
Sometime thereafter defendant played the two micro-cassette tapes as he wanted to receive his phone messages that may have been delivered to his wife’s house. He was particularly concerned about messages relating to immigration and banks. Upon hearing the content of the subject tape, he brought the tape’s existence to his lawyer’s attention.
Hiu Cheng, the complainant, testified as follows:
*740 She never gave anyone permission or authority to tape the telephone conversation that she had initiated between Derrick Bo Wan and herself, nor did she tape the conversation.
Ms. Cheng lived in the first floor apartment at 190 Bay 23rd Street in Brooklyn. She had shared the apartment with the defendant until July 10, 1997, when the defendant had to vacate the apartment after Ms. Cheng obtained an order of protection. The defendant’s brother and cousin lived in the basement apartment and second floor apartment respectively. Ms. Cheng did not change the locks and keys to her apartment until six months after her husband left. The defendant retained the keys to the apartment.
The windows facing the backyard in Ms. Cheng’s apartment cannot be locked. The backyard is accessible to the public. Ms. Cheng indicated that sometimes items in her apartment were not in the same place upon her return to her apartment as when she had left.
Ms. Cheng did give the defendant permission to enter her apartment to remove clothing and papers during the period of the order of protection.[7] On that one occasion, the defendant did enter her bedroom but the complainant did not see what items the defendant had removed.
Ms. Cheng had one answering machine. Complainant’s younger sister had purchased an answering machine for her own use. In 1998, complainant’s sister gave complainant the answering machine and set it up for her in the apartment at 190 Bay 23rd Street. The machine was located in the living room. Ms. Cheng knew only how to play messages and how to erase them. The complainant did not know how to record messages or how to change the message tape. Ms. Cheng never purchased tapes for and never changed the tape inside the answering machine. Ms. Cheng had no spare micro-cassette tapes in her apartment. The original tape remained in the machine from the time that her sister had first given her the answering machine. Ms. Cheng did not store any messages, but erased them after hearing their contents.
The answering machine containing the message tape was placed in evidence. The Phone Mate machine also contained a Phone Mate brand micro-cassette tape. The tape of the subject conversation produced by the defendant and inspected by the court was on a TDK micro-cassette.
*741 Detective Investigator (D.I.) Steven Nieves of the Kings County District Attorney’s office also testified. D.I. Nieves has been employed in the District Attorney’s office for six years, the last four years working in the Wire Room Unit conducting court-ordered covert surveillance including hidden cameras and wiretaps. D.I. Nieves had worked on cases involving more than 200 wiretaps and has received special training in this area.
D.I. Nieves had visited the first floor apartment at 190 Bay 23rd Street in Brooklyn days prior to the hearing. He had inspected the telephone pole and lines in the house. There was no tampering with the lines in the house. Nieves concluded that this would not be unusual even if an illegal wiretap had been conducted as he explained that a tap can be installed by attaching a wire purchased at a hardware store to a modular phone block. The recording equipment could be bought at a store such as Radio Shack. Every time the phone is picked up, the recorder will be triggered to record the conversation. If a micro-cassette recording device were to be employed, the equipment would be quite small. To install such a device the modular block would be easily removed with a screwdriver and the “wiretap equipment” attached within a matter of 10 minutes. At the subject premises, this could have been done in the complainant’s bedroom by moving her bed a few feet away from the wall and then returning the bed to its original position after installation.
It was stipulated between the parties that had Derrick Bo Wan testified, his testimony would be that he did not tape the subject conversation nor did he give anyone permission or authority to tape the same. Additionally it was stipulated that the Phone Mate machine was capable of recording even when as in the instant case the call was made from and not to the premises where the answering machine was located.
The defendant’s testimony as to how he obtained the tape is not credible.[8] The court, on the other hand, credits the testimony of the complainant over that of the defendant. Nota *742 bly, the Phone Mate micro-cassette in the Phone Mate answering machine supports the complainant’s testimony that she never changed the tape in the answering machine. The defendant’s tape, however, was a different brand than that of the machine. The court also credits Ms. Cheng’s testimony that she never purchased other tapes, nor did she have a spare micro-cassette in her apartment. Additionally, the court finds that Ms. Cheng did not store any messages. The court likewise credits the testimony of D.I. Nieves who demonstrated how easily a “wiretap” could have been installed. The court finds that the defendant obtained the subject tape through eavesdropping, that is, an illegal wiretap. The defendant readily had access to complainant’s apartment.
CONCLUSIONS OF LAW
Standing
CPLR 4506 (1) provides as follows: “The contents of any overheard or recorded communication, conversation or discussion, or evidence derived therefrom, which has been obtained by conduct constituting the crime of eavesdropping, as defined by section 250.05 of the penal law,* *******[9] may not be received in evidence in any trial, hearing or proceeding before any court or grand jury, or before any legislative committee, department, officer, agency, regulatory body, or other authority of the state, or a political subdivision thereof; provided, however, that such communication, conversation, discussion or evidence, shall be admissible in any civil or criminal trial, hearing or proceeding against a person who has, or is alleged to have, committed such crime of eavesdropping.”
The proscriptions of CPLR 4506 apply not only to civil, but also to criminal trials (People v Kirsh, 176 AD2d 652; People v *743 Dunham, 157 Misc 2d 289; CPL 60.10; Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4506, at 690). The exclusionary provision of CPLR 4506 “applies not simply to eavesdropping evidence unlawfully obtained by law enforcement officers, but also to such evidence gathered by any individual, and serves to deter both unlawful governmental conduct and that of private individuals.” (People v Capolongo, 85 NY2d 151, 158-159.)
It is evident that Ms. Cheng is an aggrieved person under the statute[10] (see also, CPL 710.10 [5]). It is equally clear that Ms. Cheng has standing to move to suppress unlawful eavesdropping evidence if sought to be introduced in any civil trial or proceeding. [11] Moreover, a criminal defendant may bring a motion to suppress eavesdropping evidence alleged to be unlawful (CPLR 4506 [4]; CPL 710.20). Yet, there is no statutory authority for an aggrieved person under CPLR 4506 who is not a defendant to move to suppress eavesdropping evidence in a criminal trial.
There have been no reported cases where a complainant in a criminal case has sought to suppress eavesdropping evidence. The defendant argues that Ms. Cheng has no standing to seek suppression of the tape in controversy. The People contend that they may seek suppression on the complainant’s behalf.
*744 This court holds that the People may properly seek suppression of eavesdropping evidence that a criminal defendant may have obtained in violation of CPLR 4506 as there is in New York a “strong public policy of protecting citizens against the insidiousness of electronic surveillance by both governmental agents and private individuals.” (People v Capolongo, 85 NY2d, at 160, supra, citing CPLR 4506; CPL art 700; People v Washington, 46 NY2d 116, 124.) Moreover, where a recognized right of a citizen is violated and the court’s sanction, albeit passively or by inaction, is sought by the guilty party, the People may seek to protect an aggrieved complainant’s rights by moving to suppress the unlawfully obtained evidence (see, People v Kern, 75 NY2d 638, 654, n 3 [“(A)s a representative of the community, the District Attorney has a direct interest in protecting its citizens and therefore a substantial relationship with the excluded jurors (excluded on the basis of race). Moreover, as the jurors are not parties to the litigation and are unlikely to be able to assert their own rights, the State should be able to vindicate their rights.”]; People v Bolivar, 121 Misc 2d 229, 233 [District Attorney is the proper party to assert the privacy rights of crime victims]). Where practical considerations prevent persons from asserting their own rights, the doctrine of jus tertii or third-party standing (Singleton v Wulff, 428 US 106) permits the State to assert those rights (People v Gary M., 138 Misc 2d 1081, 1091). By analogy, courts have upheld the assertion of privileges by parties other than those personally protected by the particular privilege (Matter of Grand Jury Investigation, 59 NY2d 130 [hospital could assert physician-patient privilege for the protection of a patient who had not waived the privilege]; People v Manzanillo, 145 Misc 2d 504 [District Attorney had standing to raise social worker-patient and physician-patient privileges]; People v Ellman, 137 Misc 2d 946 [Attorney General could move to quash subpoena duces tecum served by defendant on complainant for their income tax returns]).
The People have standing to suppress the tape in question on behalf of the complainant based on the State’s “strong public policy of protecting citizens against * * * electronic surveillance” (People v Capolongo, 85 NY2d 151, 160, supra).
Procedure
There is no reported case involving suppression of eavesdropping evidence sought to be introduced by a defendant in a criminal trial. There is little guidance as to what procedure ought to be utilized at such a suppression hearing.
*745 The procedure for suppression in a civil proceeding is laid out in CPLR 4506 (4). “In criminal prosecutions, the suppression procedure is governed by Article 710 of the Criminal Procedure Law.” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4506, at 690.)
The situation in the matter sub judice involves a role reversal. In the usual motion to suppress evidence obtained by an illegal seizure, the People have only the burden of going forward to show legality of the police conduct in the first instance (People v Di Stefano, 38 NY2d 640; People v Berrios, 28 NY2d 361; People v Whitehurst, 25 NY2d 389). The burden of proof at the hearing, however, is on the defendant to establish by a fair preponderance of the credible evidence that the police conduct complained of was illegal (United States v Matlock, 415 US 164, 177, n 14).
Since it is alleged that it is the defendant who conducted the illegal eavesdropping of complainant’s telephone conversation with Derrick Bo Wan, the defendant has the burden of going forward to show the legality of his conduct in the first instance. The burden is on the People to establish by a fair preponderance of the credible evidence that the defendant’s actions constituted eavesdropping.
The court conducted the hearing consonant with this procedure. Consequently, the defendant was directed to demonstrate at the outset that his possession of the tape in controversy was not the result of a violation of the eavesdropping statute.
Balancing Defendant’s Right To Present A Case Against Suppression
Having found that the defendant obtained the subject tape in violation of New York’s prohibition against eavesdropping, the court must next answer a most interesting question: whether the operation of the exclusionary rule of New York, namely CPLR 4506, denies defendant his constitutional right to due process by preventing him from presenting a chosen defense.
“Few rights are more fundamental than that of an accused to present witnesses in his own defense.” (Chambers v Mississippi, 410 US 284, 302.) “The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant’s version of the facts as well as the prosecution’s to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution’s witnesses for *746 the purpose of challenging their testimony, he has the right to * * * establish a defense. This right is a fundamental element of due process of law.” (Washington v Texas, 388 US 14, 19; see also, Chambers v Mississippi, 410 US, at 294, supra; see, US Const, 14th Amend, § 1.)
The exclusion by a trial court of certain testimony, pursuant to State exclusionary rules regarding hearsay, might constitute a violation of the Due Process Clause of the Fourteenth Amendment (Green v Georgia, 442 US 95 [Trial court improperly ruled declarant’s statement made against his interest at defendant’s punishment trial in a capital case to be inadmissable. Statement was not a listed exception to Georgia’s prohibition against hearsay.]). A mechanistic application of the hearsay rule is not appropriate to defeat the ends of justice. (Chambers v Mississippi, 410 US, at 302, supra [Mississippi exception to the rule against hearsay applied only to declarations against pecuniary interest and not penal interest. Failure to permit defendant to present witnesses to testify that another admitted to murder for which defendant was accused amounted to denial of due process].)
The Court of Appeals has adopted such an approach. Defendant sought to present the exculpatory Grand Jury testimony of his estranged wife at his murder trial when the wife was absent from the jurisdiction, and refused to return to New York in defiance of a material witness order. Despite the fact that no statutory authority existed for the admission of such Grand Jury testimony as an exception to the general prohibition against hearsay (see, CPL 670.10; but see, People v Geraci, 85 NY2d 359), the Court of Appeals sanctioned the admission of the Grand Jury testimony of the estranged wife based in part on defendant’s Federal and State constitutional right to due process (People v Robinson, 89 NY2d 648; US Const, 14th Amend, § 1; NY Const, art I, § 6).
A defendant’s constitutional right to present evidence, however, is not an absolute one. (Montana v Egelhoff, 518 US 37.) A defendant may be precluded from presenting a witness as a sanction for defense counsel’s willful violation of a discovery rule or order. (Taylor v Illinois, 484 US 400 [preclusion if no violation of defendant’s Sixth Amendment right to compulsory process]; Michigan v Lucas, 500 US 145, 151.)
In New York, appellate courts have upheld the trial court’s preclusion of relevant evidence when a defendant has failed to abide by the procedural requirements of providing adequate notice to the People (People v DiDonato, 87 NY2d 992, 993 *747 [trial court’s denial of defendant’s motion to file a late notice of psychiatric evidence made more than 15 months after entry of not guilty plea upheld on appeal]; People v Almonor, 93 NY2d 571 [Court of Appeals upheld trial court’s preclusion of defense by mental disease or defect as defendant failed to serve proper notice in timely manner as required by CPL 250.10]; but see, Ronson v Commissioner of Correction of State ofN. Y., 604 F2d 176 [Trial Judge precluded insanity defense because of defense counsel’s failure to comply with CPL 250.10. Second Circuit balanced the defendant’s interest in presenting his case against the State’s legitimate interest in conducting the prosecution without the substantial prejudice that might follow the last minute introduction of an insanity defense. The court held that the trial court’s ruling to preclude the defense violated defendant’s Sixth Amendment rights]; People v Toro, 198 AD2d 532, 533 [trial court upheld in precluding the defendant from presenting alibi witnesses that were not properly and timely noticed under CPL 250.20 and for whom defendant did not offer a sufficient reason for the delay]; accord, People v Marshall, 170 AD2d 463, and People v Corpas, 150 AD2d 710; but see, Escalera v Coombe, 852 F2d 45 [Second Circuit held that defense counsel’s inability to provide good excuse for failure to provide timely notice of alibi witness did not show that conduct was willful or motivated to gain a tactical advantage requiring preclusion of witness’ testimony]).
Most Federal courts will exclude evidence in response to a discovery violation only if willful conduct is involved (Bowling v Vose, 3 F3d 559, 560-561, citing United States v Johnson, 970 F2d 907, 911 [DC Cir 1992]; United States v Mitan, 966 F2d 1165, 1175 [7th Cir 1992]; Horton v Zant, 941 F2d 1449, 1467 [11th Cir 1991]; United States v Peters, 937 F2d 1422, 1426 [9th Cir 1991] [exclusion permitted under Taylor v Illinois, 484 US 400, supra, only if misconduct is involved]; Eckert v Tansy, 936 F2d 444 [9th Cir 1991]; Escalera v Coombe, 852 F2d 45, 48 [2d Cir 1988], supra; Chappee v Vose, 843 F2d 25 [1st Cir 1988]).
The mere invocation of the defendant’s right to offer evidence cannot automatically and invariably outweigh countervailing public interests (Taylor v Illinois, 484 US, at 414, supra). There is a “strong public policy of protecting citizens against the insidiousness of electronic surveillance by both governmental agents and private individuals.” (People v Capolongo, 85 NY2d 151, 160, supra.) “New York has * * * responded to the problems raised by electronic surveillance *748 with greater protection than is conferred under Federal law, and continues to assert this strong public policy, through evolving legislation, as technology advances.” (Supra, at 160.) Balancing defendant’s constitutional right to present a case against the rights of citizens of the State of New York to be free from illegal eavesdropping, the court finds suppression a proper sanction for defendant’s violation of the law. No violation of defendant’s due process right occurs as a result of this suppression (see, Montana v Egelhoff, 518 US, at 43, supra, citing Patterson v New York, 432 US 197, 201-202).
Accordingly, the People’s motion to suppress the taped conversation of Ms. Cheng is granted. The defendant may use the contents of the taped conversation for impeachment purposes should the trial court deem it relevant and otherwise admissible. (People v Hughes, 124 AD2d 344, 347, lv denied 69 NY2d 828; see also, Mahoney v Staffa, 256 AJD2d 829.)

. This is a written version of an oral decision rendered July 12, 1999.

. The assault in the first degree count (Penal Law § 120.10 [1]) alleges that the defendant intended to cause serious physical injury and did cause such injury by means of a dangerous instrument.

. The conversation that had been taped was in the Mandarin dialect of Chinese.

. The court declined to rule on the issue of whether the conversation would be admissible on the ground of relevance as this was an issue to be determined by the court at the time of trial. Thus the application for a ruling on relevance was premature. For the purposes of discussion of the other issues involved, the court will assume that the contents of the conversation are relevant.

. See, Procedure, infra.

. The defendant was given use immunity as to testimony concerning an illegal wiretap or eavesdropping. (See, Simmons v United States, 390 US 377.)

. The complainant indicated that she had acquiesced to her mother’s request.

. The People argue that even if the court were to credit the defendant’s testimony that he “merely” had taken or stolen the tape, the defendant should not be able to take advantage of his wrongdoing. This contention is rejected by the court. Evidence uncovered as a result of a search by a private citizen which search would be illegal if made by a governmental agent is admissible in a criminal prosecution. The Supreme Court and the Court of Appeals have held that the Fourth Amendment was intended to restrain only “the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies.” (Burdeau v Mc *742 Dowell, 256 US 465, 475; People v Jones, 47 NY2d 528; People v Horman, 22 NY2d 378.) Thus where an individual has no connection to a governmental agency and a search is conducted for purely personal reasons, the evidence obtained is admissible in a criminal prosecution (People v Hairston, 144 AD2d 383). The People’s argument to preclude the tape, assuming arguendo it is believed to be taken by the defendant, is without merit. It is ironic to note that it is the government which typically maintains successfully that evidence taken by a private person is admissible.

. “A person is guilty of eavesdropping when he unlawfully engages in wiretapping, mechanical overhearing of a conversation, or intercepting or accessing of an electronic communication.” (Penal Law § 250.05.)
“ ‘Wiretapping’ means the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, without the consent of either the sender or receiver, by means of any instrument, device or equipment” (Penal Law § 250.00 [1]).

. CPLR 4506 (2) provides:
“As used in this section, the term ‘aggrieved person’ means:
“(a) A person who was a sender or receiver of a telephonic or telegraphic communication which was intentionally overheard or recorded by a person other than the sender or receiver thereof, without the consent of the sender or receiver, by means of any instrument, device or equipment; or
“(b) A party to a conversation or discussion which was intentionally overheard or recorded, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment; or
“(c) A person against whom the overhearing or recording described in paragraphs (a) and (b) was directed.”

. CPLR 4506 (3) provides:
“An aggrieved person who is a party in any civil trial, hearing or proceeding before any court, or before any department, officer, agency, regulatory body, or other authority of the state, or a political subdivision thereof, may move to suppress the contents of any overheard or recorded communication, conversation or discussion or evidence derived therefrom, on the ground that:
“(a) The communication, conversation or discussion was unlawfully overheard or recorded; or
“(b) The eavesdropping warrant under which it was overheard or recorded is insufficient on its face; or
“(c) The eavesdropping was not done in conformity with the eavesdropping warrant.”