NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2820-13T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

  v.

KASON D. HOCKETT,

      Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

January 27, 2016

APPELLATE DIVISION

Submitted September 22, 2015 — Decided January 27, 2016

Before Judges Fisher, Espinosa and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 08-08-01376.

Joseph E. Krakora, Public Defender, attorney for appellant (Lon Taylor, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Rookmin Cecilia Beepat, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, defendant argues the trial judge erred in excluding photographs that purported to demonstrate an eyewitness falsely testified on a collateral issue.  The judge's ruling was based in part on his belief that the defense, or

persons sympathetic to the defense, engaged in chicanery to create or procure the photographs. We find the judge's speculation about the defense's motives to be irrelevant to the admissibility of the photographs, and we reverse and remand for a new trial.

In 2010, defendant was tried on charges of first-degree murder, N.J.S.A. 2C:11-3, third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), and fourth-degree unlawful possession of a weapon (a knife), N.J.S.A. 2C:39-5(d), in connection with the death of Jason Sharpe in Jersey City on May 13, 2008. At the conclusion of a five-day trial, defendant was acquitted of murder and the weapons offenses, but convicted of the lesser-included offense of second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), and sentenced to a nine-year prison term subject to an eighty-five percent period of parole ineligibility.

In this appeal, defendant argues:

> I. THE TRIAL COURT'S EXCLUSION OF PICTURES SHOWING A KEY WITNESS RECENTLY SMOKING DRUGS, CONTRARY TO HER TESTIMONY, MANDATES REVERSAL OF DEFENDANT'S CONVICTION.
>
> II. DEFENDANT'S NEAR MAXIMUM NINE-YEAR SENTENCE OF IMPRISONMENT FOR SECOND-DEGREE MANSLAUGHTER, SUBJECT TO THE 85% NERA PAROLE BAR, WAS EXCESSIVE.

Because we agree with the argument contained in Point I, we do not reach Point II.

In a nutshell, the State presented a simple story to support its theory that defendant knowingly and purposefully murdered Sharpe. The State presented evidence that at 6:30 a.m., on May 13, 2008, on Wegman Parkway near Ocean Avenue in Jersey City, defendant and a companion encountered Sharpe. According to the State, defendant and Sharpe had some sort of disagreement, and defendant's companion egged him on until defendant approached Sharpe and stabbed him in the chest with a knife, causing Sharpe's death. In its case-in-chief, the State called police officers who investigated, as well as toxicologists, but the only witness the State called who claimed to have seen the stabbing was Martha Rush.[1]

After the State rested, defendant testified, explaining how Sharpe had pulled a knife on him and, as he acted in self-defense, the knife ended up in Sharpe's chest. In short, there was no dispute that Sharpe died as a result of a knife wound to the chest and that the stabbing occurred while he and defendant

---

[1] The State also called Sheila Bullock, who was in the vicinity at the time, as she explained, "to cop . . . some drugs." Bullock testified she saw defendant put his arm around Sharpe in what looked to her "like a friendly gesture," but that she thereafter "focus[ed]" her attention "elsewhere," did not see defendant in that area again, and only later noticed that "[i]t looked like" Sharpe was bleeding from his stomach.

were engaged in some sort of altercation. The question for the jury was the degree, if any, to which defendant was culpable. As a result, Rush's testimony was highly critical.

In delving further into Rush's testimony, we note she had given prior statements, which contained various inconsistencies, as the defense pointed out during cross-examination. In the midst of cross-examining Rush about where the knife came from, the following occurred:

> Q. Do you know if [defendant] was in fear of his life because Jason [Sharpe] had a knife and came after him?
>
> A. Jason didn't have any knife. He didn't have no knife.
>
> Q. And the knife that was used in this case just appeared out of nowhere. You don't remember ever seeing Jason with a knife[?]
>
> A. Jason didn't have no knife.
>
> Q. Were you high that day?
>
> [THE PROSECUTOR]; Objection, Your Honor.
>
> A. No, I just woke up.
>
> THE COURT: Overruled, she answered the question.
>
> A. <u>I don't get high, I been clean since March 23rd, '07</u>.
>
> Q. What about before that?
>
> A. Before that?
>
> Q. Yeah.

A. What do you mean before that?

Q. Well, what happened before that?

A. I used to get high. <u>Like I said, I was clean since '07</u>. This happened after I been clean.

Q. This happened in 2008. <u>Now are you saying you don't get high at all</u>?

A. <u>No, I don't</u>.

Q. <u>You don't get high now</u>?

A. <u>No, I don't</u>.

[Emphasis added.]

In light of this testimony, defense counsel requested a sidebar during which he expressed a desire to introduce during cross-examination photographs purporting to show the witness using drugs. The prosecutor objected, asserting there was "no foundation" for the photographs. The judge barred this anticipated line of cross-examination because of the need for "some foundation as to when these [photographs] were taken." Defense counsel responded he could "have a witness here tomorrow to testify in terms of who took the picture." The trial was adjourned for the day.

The next morning, outside the presence of the jury, the trial judge heard the testimony of Dawanna Williams, who identified three photographs depicting Rush "smoking coke" that

were taken with her camera "two or three days ago." At one point during the N.J.R.E. 104 hearing, the judge questioned the witness in a way that revealed his suspicion the photographs were taken for the sole purpose of aiding the defense:

> THE COURT: So you know the defendant's father.
>
> THE WITNESS: Yes.
>
> THE COURT: You took pictures of the only factual witness in his murder case getting high. You gave them to the father, correct?
>
> THE WITNESS: No, it was like a whole crowd of us around and I was showing the pictures around, Your Honor.
>
> THE COURT: Why did you take the pictures?
>
> THE WITNESS: Because I wanted to keep pictures from the — you know, to take with me to have a whole album book that I was going to take with me to [a substance abuse] program, you know, to keep for memories. Because I'm trying to get myself together, Your Honor.

After additional testimony during this hearing, defense counsel continued to urge the right to use the photographs to impeach Rush regarding her claim a day earlier that she had not used drugs since March 23, 2007.

The judge first analyzed the controversy in the following way:

> Mr. Hockett was scheduled for trial on April 27[, 2010]. A good friend of Mr. Hockett's father, this woman, just happens to get high

> for the second time in three years on the evening of April 27th. Okay? Just happens to have a camera she bought a month ago. Happens to take pictures that night ingesting drugs. Happens to get them developed the next day, even though she had the camera for a month. Happens by chance to provide them to her good friend whose son is on trial for murder this week. And just happens to get high with — only for the second time in three years on that night of April 27th, the week of the murder trial.

In response, defense counsel recounted that Rush had testified "she hadn't taken drugs since 2007," and that the photographs deeply impacted her credibility because they showed her "getting high . . . the day before she's about to be a prosecution witness in a homicide."

As the judge expressed his concern about the defense's perceived conduct in obtaining the photographs, counsel persisted that "[t]he pictures are the pictures." He further argued there was no evidence of a "nefarious" purpose in obtaining the photographs, to which the judge responded: "it's so obvious . . . phenomenally obvious." Defense counsel pressed the point further, rhetorically asking, "[w]hat information do you have to suggest [Williams] did anything improper or that I did anything improper introducing those [photographs]?" The judge responded: "Her demeanor when she testified." After additional argument, the judge concluded:

> [t]he fact that Ms. Rush ingested or became
> high on April 27th, 2010[,] is not relevant
> at all to this trial as to her observations
> that took place on May 13th, 2008[.] It is a
> collateral issue. It just clouds the issue
> before the jury. It's not relevant in my
> mind. It's not going to be permitted. And
> in all due respect, this [c]ourt . . .
> believes the motives behind those
> photographs were clearly for litigation
> purposes for this trial. No doubt in my
> mind.

For the reasons that follow, we conclude that the judge's ruling was erroneous and a new trial is required.

I

The judge's reasons for excluding the photographs was multi-faceted. We discern from the judge's comments three separate grounds for their exclusion: (a) the judge found the authenticating witness was not credible; (b) the jury would be misled or confused by the use of the photographs; and (c) the photographs were created or procured through unlawful acts or chicanery.

A

As to the first aspect, we start with the fact that a photograph is a "writing," N.J.R.E. 801(e), and, therefore, must be authenticated. See State v. Mays, 321 N.J. Super. 619, 628 (App. Div.), certif. denied, 162 N.J. 132 (1999). Consequently, a proponent of such evidence is required to make "a prima facie showing of authenticity." State v. Joseph, 426 N.J. Super. 204,

8<span style="float:right">A-2820-13T2</span>

220 (App. Div.) (quoting Mays, supra, 321 N.J. Super. at 628), certif. denied, 212 N.J. 462 (2012). This burden was not designed to be onerous. It is enough that the record contains "evidence sufficient to support a finding that the matter is what its proponent claims." N.J.R.E. 901. The testimony of a photographer is unnecessary; "[a]ny person with knowledge of the facts represented in the photograph may authenticate it." Joseph, supra, 426 N.J. Super. at 220 (citing State v. Wilson, 135 N.J. 4, 14 (1994)). Here, the defense elicited the testimony of Williams, who claimed she was present a few days earlier when the photographs of Rush using drugs were taken by another friend. N.J.R.E. 901 required nothing more to authenticate the photographs.

We recognize that, as gatekeeper, the judge has some degree of latitude when testimony in support of authentication is found unworthy of credit. See State v. Tormasi, __ N.J. Super. __, __ (App. Div. 2015) (slip op. at 11-14). But the items in question were photographs, and N.J.R.E. 901 required only the witness's assertions about the approximate date they were taken, the identity of the person or persons in the photographs, and the nature of the conduct depicted. In considering the authenticating testimony, the judge was not being asked to accept the truth of the witness's description of something

intangible, incorporeal, imprecise or impalpable that might have warranted some consideration of the witness's credibility. For example, if Williams had testified only that two nights earlier she saw Rush using narcotics — but did not have photographs to support that contention — the judge would have been within his rights as gatekeeper to preclude that testimony if he found the witness lacked credibility. But here, Williams was only asked to authenticate something tangible — photographs that supported the contention that Rush was not truthful when she claimed she had not used narcotics since March 23, 2007. Her testimony about the photographs sufficed to authenticate them. There was no credibility call to make; as defense counsel put it, "[t]he pictures are the pictures."

Apparently recognizing this, the prosecution did not argue the witness's testimony about what the photographs depicted was not credible; the prosecution argued only that "this type of testimony will have a highly prejudicial effect, that it will clearly mislead the jury, [that] it amounts to essentially an undue consumption of the [c]ourt's time," and that the photographs were otherwise lacking in probative value. By failing to otherwise object, the prosecution tacitly acknowledged the photographs actually depicted what the defense claimed. That was all N.J.R.E. 901 required.

Moreover, even if there was some legitimate reason for questioning the witness's veracity about what the photographs depicted, the better course was for the judge, in his gatekeeping role, to acknowledge the photographs appeared to be what they were purported to be and leave for the factfinder a "more intense review" of the photographs and the credibility of the authenticating witness. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 901 (2015), quoted with approval in Konop v. Rosen, 425 N.J. Super. 391, 411 (App. Div. 2012). We, thus, conclude that the judge mistakenly exercised his discretion in finding the photographs were not sufficiently authenticated.

B

To the extent the evidence ruling was based on N.J.R.E. 403 grounds, we conclude the judge abused his discretion. N.J.R.E. 403(a) permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading the jury." We find no support for the invocation of N.J.R.E. 403(a) as the means for excluding this evidence.

The evidence was offered for the purpose of challenging Rush's credibility. Rush testified she had not engaged in the use of narcotics since March 23, 2007. Had the judge permitted

11                                                    A-2820-13T2

defense counsel's course of attack on Rush's credibility, she would have been confronted with the photographs and, in some manner, asked to confirm that she was depicted in the photograph using drugs and that the event photographed occurred after March 23, 2007. We have no way of knowing what Rush's responses would have been, but whether she confirmed, denied or explained what the photographs were claimed to have depicted, the proposed line of questioning would hardly have been confusing or misleading. If Rush confirmed what the defense was attempting to show, then counsel would have been armed with another reason for urging the jury's rejection of Rush's credibility, in order to create doubt about her version of what occurred between defendant and Sharpe. The prosecution could have argued in response, as it argues now, that Rush's false claim of sobriety was insignificant in the overall picture or otherwise attempt to mitigate or minimize the significance of this line of inquiry. This information would not have been too complicated or confusing for the jury to handle.[2]

---

[2] The prosecution also argued that the admission of the photographs and the additional cross-examination of Rush would have unduly delayed the trial or wasted time. N.J.R.E. 403(b). We find no merit in this argument. What little time would have been expended in this regard was a small matter when considering defendant was on trial for first-degree murder.

The excluded evidence was relevant, having been made so by Rush's volunteered assertion that she had not gotten high since March 23, 2007.[3] The evidence provided a basis by which the jury might doubt the credibility of the only witness who provided direct evidence that defendant did not act in self-defense; its exclusion was prejudicial to the defense.

C

Finally, the judge precluded the photographs, and the cross-examination of Rush based on the photographs, because he believed the defense acted improperly in obtaining them. At the outset, we agree, as defendant argued to the trial judge, that the record does not support a finding that the defense or persons sympathetic to the defense acted illegally or with a nefarious intent in procuring this evidence. Even if there was support for the judge's assumption that the circumstances by which the photographs were procured were somehow orchestrated

_____

[3] The State argues in response to this appeal that N.J.R.E. 608(a) also impedes admission of the photographs. The State did not make this argument at trial, and the judge's ruling did not encompass such a determination. Because of the State's failure to properly preserve this contention, it would be unfair to consider it further on appeal. See State v. Witt, __ N.J. __, __ (2015) (slip op. at 9-10). In any event, we find the argument has no merit because the photographs were not offered for the purpose of suggesting Rush was a drug addict, which might impact her ability to perceive what occurred and relate it to the court. The photographs were intended to demonstrate, pursuant to N.J.R.E. 607, that Rush testified falsely when she claimed she had not used narcotics since March 23, 2007.

for the defendant's benefit, the photographs would still be admissible.

Indeed, on this third facet of the judge's ruling, we start with a long-established general proposition that — except, of course, when clashing with Fourth Amendment principles — "the admissibility of evidence is not affected by the illegality of the means through which the party has obtained the evidence." 8 Wigmore on Evidence § 2183 (McNaughton rev. 1961), quoted with approval in Tartaglia v. Paine Webber, Inc., 350 N.J. Super. 142, 151 (App. Div. 2002).[4] Our Supreme Court recognized that, prior to the adoption of the exclusionary rule, evidence seized by the State through illegal means could be used against the accused in a criminal prosecution. State v. Macri, 39 N.J. 250, 263-64 (1963); see also Olmstead v. United States, 277 U.S. 438, 467, 48 S. Ct. 564, 569, 72 L. Ed. 944, 951 (1928) (recognizing the "common law rule is that the admissibility of evidence is not affected by the illegality of the means by which it was obtained"). With the advent of the exclusionary rule, the common law rule was altered — but only through imposition of a limitation on the use of illegally-obtained evidence by the

---

[4] After the Tartaglia matter was tried and judgment entered, a later unpublished decision by this court relating to other issues was affirmed in part and reversed in part by the Supreme Court. Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81 (2008).

prosecution. In other words, the exclusionary rule was designed "'to deter future unlawful police conduct' by denying the prosecution the spoils of constitutional violations," State v. Shaw, 213 N.J. 398, 413 (2012) (emphasis added) (quoting State v. Evers, 175 N.J. 355, 376 (2003)), and to prevent our courts from becoming "a forum for evidence procured" through the State's violation of an individual's constitutional rights, ibid. (quoting State v. Williams, 192 N.J. 1, 14 (2007)). These principles impose no impediment to the use of illegally-obtained evidence by the accused.

Absent application of the exclusionary rule or any other curb placed on wrongful police conduct, public policy favors the admission of all probative evidence however obtained. This policy favors an accused's offer of any relevant evidence, even if obtained illegally. See, e.g., Burdeau v. McDowell, 256 U.S. 465, 475, 41 S. Ct. 574, 576, 65 L. Ed. 1048, 1051 (1921); State v. Calcagno, 120 N.J. Super. 536, 537 (App. Div. 1972); People v. Huang Qike, 700 N.Y.S.2d 640, 644 n.8 (Sup. Ct. 1999), aff'd, 726 N.Y.S.2d 294 (App. Div. 2001). There is no evidence in this record to suggest the defense acted illegally in the creation or procuring of the evidence in question, but the evidence would be admissible even if there was. And it follows from our conclusion that illegal conduct will not bar admission of evidence offered

by an accused, that evidence obtained through less wrongful means is also admissible.[5]

Accordingly, we find no relevance in the judge's supposition that the defense or persons sympathetic to the defense wrongfully obtained the photographs. Even if stolen, the photographs would have been admissible. See, e.g., Huang Qike, supra, 700 N.Y.S.2d at 644 n.8. To be sure, those who unlawfully or fraudulently create or acquire evidence can be prosecuted or otherwise held answerable for that conduct; that, however, has no bearing on the admissibility of the evidence. Tartaglia, supra, 350 N.J. Super. at 150-51. We conclude the

---

[5] The prosecution's procuring of evidence through the wrongful acts of a private party has not often posed an impediment to admission. See, e.g., Colorado v. Connelly, 479 U.S. 157, 166, 107 S. Ct. 515, 521, 93 L. Ed. 2d 473, 483 (1986); State v. Chen, 208 N.J. 307, 317-18 (2011). Courts have also recognized the prosecution's right to use evidence produced by police lies and trickery. See, e.g., Frazier v. Cupp, 394 U.S. 731, 737-38, 89 S. Ct. 1420, 1424, 22 L. Ed. 2d 684, 692 (1969) (finding a confession to be voluntary and admissible where police lied to defendant that his co-defendant had implicated him); State v. Cooper, 151 N.J. 326, 355-56 (1997) (upholding confession where police wrongly informed defendant he could be facing life in prison rather than a death sentence); see generally State v. Patton, 362 N.J. Super. 16, 28-38 (App. Div.), certif. denied, 178 N.J. 35 (2003). If the prosecution — limited by an overriding duty "to see that justice is done" and to "refrain from improper methods," State v. Frost, 158 N.J. 76, 83 (1999) (internal quotations omitted) — may take advantage of lies, chicanery and other wrongful conduct of law enforcement personnel and private parties, certainly the accused may do the same.

judge erred in excluding the photographs and in thereby limiting the scope of the defense's cross-examination of Rush.

## II

The State has not argued harmless error as an alternate ground for affirming. Notwithstanding the State's waiver in this regard, we find the doctrine inapplicable for the following reasons.

Trial judges are entrusted with broad discretion in determining the proper limits of cross-examination, but "we have repeatedly expressed our adherence to the critical, and constitutionally required, role of cross-examination in a criminal trial." State v. Wormley, 305 N.J. Super. 57, 66 (App. Div. 1997), certif. denied, 154 N.J. 607 (1998). The right of cross-examination, often described as "the 'greatest legal engine ever invented for the discovery of truth,'" California v. Green, 399 U.S. 149, 158, 90 S. Ct. 1930, 1935, 26 L. Ed. 2d 489, 497 (1970) (quoting 5 Wigmore on Evidence § 1367 (3d ed. 1940)), constitutes "a primary interest" secured by the Confrontation Clause, Douglas v. Alabama, 380 U.S. 415, 418, 85 S. Ct. 1074, 1076, 13 L. Ed. 2d 934, 937 (1965); see also Kentucky v. Stincer, 482 U.S. 730, 736, 107 S. Ct. 2658, 2662, 96 L. Ed. 2d 631, 641 (1987); State v. Laboy, 270 N.J. Super. 296, 303 (App. Div. 1994), and critical to "ensuring the

integrity of the fact-finding process," Stincer, supra, 482 U.S. at 736, 107 S. Ct. at 2662, 96 L. Ed. 2d at 641. As we have recognized:

> Cross-examination affords the accused an opportunity to test the recollection and sift the conscience of the witness. It also compels the witness to stand face to face with the jury in order that it may observe him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.
>
> [Laboy, supra, 270 N.J. Super. at 303 (citations omitted).]

Cross-examination necessarily includes the right to impeach or discredit a witness. Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347, 353-54 (1974). In considering a restraint on an accused's right to cross-examine, a court must recognize that it "does not matter that the likelihood of defendant's contention 'might be slim.'" Wormley, supra, 305 N.J. Super. at 66 (quoting State v. Crudup, 176 N.J. Super. 215, 221 (App. Div. 1980)); see also State v. Zenquis, 251 N.J. Super. 358, 367 (App. Div. 1991) (recognizing that "[t]he point to be stressed is that under our system, a defendant is entitled to fully test the State's proofs by challenging a witness's perceptions and his ability to make observations"), aff'd, 131 N.J. 84 (1993).

Rush was a critical witness and the judge's ruling limited the extent to which the defense could challenge her credibility. The exclusion of the photographs and the limitation on the defense's cross-examination of Rush — a ruling which infringed defendant's federal and state confrontation rights — was not harmless beyond a reasonable doubt. State v. Cabbell, 207 N.J. 311, 338 (2011); State v. Macon, 57 N.J. 325, 338 (1971). Indeed, even if we view the judge's error as lacking constitutional stature, we nevertheless conclude in the circumstances that it had the clear capacity to produce an unjust result. See R. 2:10-2.

Reversed and remanded for a new trial.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION