NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3683-14T2

JOAN MERNICK and JOHN
MERNICK,

     Plaintiffs-Respondents,

WANDA MCCUTCHEN and HUDSON
NEWS DISTRIBUTORS, LLC,

     Defendants-Appellants.

> **APPROVED FOR PUBLICATION**
>
> **September 3, 2015**
>
> **APPELLATE DIVISION**

_____

Argued May 27, 2015 — Decided September 3, 2015

Before Judges Messano, Hayden and Sumners.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No.
L-2117-14.

Edward J. Piasecki argued the cause for
appellants (Graziano, Piasecki & Whitelaw,
LLC, attorneys; James B. Graziano, on the
brief).

Leonard S. Miller argued the cause for
respondents.

The opinion of the court was delivered by

HAYDEN, J.A.D.

Defendants Wanda McCutchen and Hudson News Distributors, LLC

(Hudson) appeal from a March 13, 2015 Law Division order requiring

them to produce surveillance video taken of plaintiff Joan Mernick

before taking her deposition. Defendants filed a motion for leave to appeal, which this court granted along with a stay pending appeal. After considering the arguments in light of the applicable legal principles, we reverse.

The record reveals that Mernick and McCutchen were involved in an automobile accident on March 26, 2012. Mernick and her husband filed a civil complaint alleging that McCutchen and Hudson, her employer, caused the accident through their negligence and requested compensatory damages and damages for loss of consortium. Defendants denied any negligence, set forth several affirmative defenses and answered the uniform interrogatories. In their interrogatory answers, they reported that they had "possession of surveillance video depicting plaintiff on nine separate occasions. Copies of the video will be supplied."

As discovery proceeded, the defendants scheduled Mernick's deposition, but she cancelled the first date. The parties rescheduled the deposition for February 10, 2015. On the day before the deposition, Mernick's attorney informed defendants' counsel that Mernick would not attend until after the defendants provided the surveillance video. Defendants replied that they would produce the video after the deposition. As a result, Mernick's counsel refused to produce her for the deposition.

2

Defendants moved the trial court to extend discovery and compel plaintiff to attend her deposition. Mernick cross-moved to compel production of the surveillance video. The court extended discovery, and ordered defendants to produce the video prior to deposing Mernick. Finding that the video was work product covered by Rule 4:10-2(c), the court determined that the unique evidence could not be obtained by any other means. "As such, [p]laintiffs have established undue hardship in acquiring a substantial equivalent of the relevant surveillance recordings in [d]efendants' possession." The court found that defendants had a duty to produce the video, consistent with Jenkins v. Rainner, 69 N.J. 50 (1976). The court reasoned:

> [T]wo conclusions may be drawn from the opinion by the Jenkins court: first, the trial court has absolute discretion in shaping and prescribing discovery obligations, such as production of surveillance or attendance of parties sought to be deposed; and second, a trial court may - but is not required to - condition a demand for surveillance motion pictures on a party's consent to be deposed before said pictures are actually produced.
>
> In this instance, since the surveillance videos were conducted prior to the deposition of [p]laintiffs, the [c]ourt, in its discretion, is ordering [c]ounsel for [d]efendants to produce and deliver the surveillance videos of [p]laintiff(s) to their [c]ounsel prior to their depositions.

Accordingly, the court ordered the tape to be produced immediately. This appeal followed.

3

We begin by considering the standard of review. We generally defer to discovery decisions of trial judges and only review them to determine whether the court abused its discretion. C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). A reviewing court will not defer to a trial court if its decision "'is based on a mistaken understanding of the applicable law.'" Ibid.

We next consider the well-established legal principles that inform our analysis. The public policies underpinning our discovery rules include "expeditious handling of cases, avoiding stale evidence, and providing uniformity, predictability and security in the conduct of litigation." Zaccardi v. Becker, 88 N.J. 245, 252 (1982) (citations omitted). In furtherance of those policies, "[t]he discovery rules were designed to eliminate, as far as possible, concealment and surprise in the trial of law suits to the end that judgments rest upon real merits of the causes and not upon the skill and maneuvering of counsel." Oliviero v. Porter Hayden Co., 241 N.J. Super. 381, 387 (App. Div. 1990). It is well-established that neither party can control the timing of discovery. See R. 4:10-4; Posta v. Chung-Loy, 306 N.J. Super. 182, 198-99 (App. Div. 1997) (citing Dick v. Atl. City Med. Ctr., 173 N.J. Super. 561, 565 (Law Div. 1980)), certif. denied, 154

4

N.J. 609 (1998); In re A., 277 N.J. Super. 454, 466 (App. Div. 1994) ("[T]he judge has control of discovery through the exercise of the court's discretion[.]").

Further, when materials are relevant to the issues in an action, there is "a presumption of discoverability[.]" Payton v. N.J. Tpk. Auth., 148 N.J. 524, 539 (1997). However, a party can overcome this presumption "by demonstrating the applicability of an evidentiary privilege." Ibid.

One such privilege protects from discovery an attorney's work product. The United States Supreme Court recognized the need to protect certain aspects of an attorney's work in Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 393, 91 L. Ed. 451, 462 (1947), explaining that "[p]roper preparation of a client's case demands that [lawyers] assemble information, sift . . . the relevant from the irrelevant facts, prepare . . . legal theories and plan . . . strategy without undue and needless interference."

In New Jersey, parties are generally permitted to obtain any materials that are relevant to the subject matter of the action so long as the materials are not privileged. R. 4:10-2(a). Even inadmissible evidence is discoverable if such information "appears reasonably calculated to lead to the discovery of admissible evidence[.]" Ibid. A party cannot resist discovery of material

5

on the basis that its adversary already has knowledge of the matter on which it is seeking discovery.  Ibid.

In contrast to the general presumption of discoverability, if material was prepared in anticipation of litigation, Rule 4:10-2(c) limits discovery.

> [A] party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable under R. 4:10-2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
>
> [Ibid.]

In addition, the Rule exempts statements by parties and non-parties from this protection, permitting each to retrieve statements they made without demonstrating a substantial need.  Ibid.  However, all other work product of an attorney receives protection unless the other party shows both undue hardship and substantial need. Ibid.

The surveillance video in the present case clearly falls within this category of material prepared for litigation.  Our Supreme Court considered a strikingly similar discovery issue, albeit in slightly different circumstances, in Jenkins.  In that

6

case, the defendants placed the plaintiff under surveillance after they had already deposed her. Jenkins, supra, 69 N.J. at 53. Although the defendants informed the plaintiff about the surveillance and produced the individuals who filmed her for a deposition, the individuals refused to answer questions about the circumstances of their investigation, claiming the work product privilege. Id. at 53.

The Court rejected the defendants' assertion that, as work product, the films were "cloaked with absolute immunity from discovery[.]" Id. at 54-55. While acknowledging the films were created in anticipation of litigation, the Court found that the interest in full disclosure was more weighty than any interest in surprising the plaintiff at trial. Id. at 56-57. The Court explained that "essential justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts." Id. at 56.

The Court rejected defendants' argument that the plaintiff did not show a substantial need for the films, noting that "[t]he surprise which results from distortion of misidentification is plainly unfair. If it is unleashed at the time of trial, the opportunity for an adversary to protect against its damaging inference by attacking the integrity of the film and developing counter-evidence is gone or at least greatly diminished." Id. at

7

54, 57-58. The Court stressed the value to all parties, for both settlement and trial purposes, to know if "the motion pictures actually portray plaintiff engaged in some strenuous activity which on deposition she had already testified is beyond her capacity, then it is not probable that pretrial disclosure of that kind of inconsistency will enable her to salvage the case[.]" Id. at 58. Consequently, the Court directed that the films be turned over after the plaintiff was deposed again concerning damages only. Id. at 60. The Court also found that evidence such as surveillance films was "unique" and not capable of being replicated, and thus obtaining a substitute would create an undue hardship. Id. at 58.

While the Court ordered defendants to produce the surveillance video after the second deposition in Jenkins, it added guidance for the future. Id. at 59-60. It directed that the party conducting the surveillance could depose the plaintiff about the activities that it filmed her performing before turning it over in order to preserve the evidentiary value of the video. Id. at 60. It added that "[a]s a general proposition, and always subject to the discretion of the trial court, any demand for surveillance motion pictures should be accompanied by a consent to be deposed after the movies have been taken and before the films must be presented for the adversary's examination." Ibid.

8

While recognizing the possibility of a need for "deviation from this general rule," the Court was "confident that a trial judge's discretion is a sufficient source of protection when the particular circumstances are presented."  Ibid.

We find the reasoning in Jenkins unassailable and although it was decided many years ago, its reasoning still serves the beneficial purposes of discovery while honoring the work product doctrine.  Although no New Jersey case has addressed this exact issue since Jenkins, the Court's approach has considerable support in federal rules decisions.  Generally, federal courts have found that surveillance evidence obtained for impeachment purposes is protected by the work product doctrine.  See, e.g., Marchello v. Chase Manhattan Auto Fin. Corp., 219 F.R.D. 217, 219 (D. Conn. 2004).  Some courts have extended this principle to hold that surveillance evidence is not discoverable if the party decides that it will not introduce the evidence at trial.[1]  Fletcher v.

---

[1] Some federal courts treat discovery obligations differently based on a party's intended use of surveillance evidence.  These courts frame the distinction as one between substantive evidence - - used to prove a fact in issue - - and impeachment evidence - - offered to discredit a witness or reduce the effectiveness of his or her testimony.  See Newsome v. Penske Truck Leasing Corp., 437 F. Supp. 2d 431, 434-35 (D. Md. 2006).  If a court finds that a piece of evidence is substantive, it generally orders that the evidence be produced immediately.  Babyage.com, Inc. v. Toys "R" Us, Inc., 458 F. Supp. 2d 263, 265-66 (E.D. Pa. 2006); Jerolimo v. Physicians for Women, P.C., 238 F.R.D. 354, 357 (D. Conn. 2006).  But see Walls v. Int'l Paper Co., 192 F.R.D. 294, 299 (D. Kan. 2000).  On

Union Pac. R.R. Co., 194 F.R.D. 666, 668, 674 (S.D. Cal. 2000); Bradley v. Wal-Mart Stores, Inc., 196 F.R.D. 557, 557-58 (E.D. Mo. 2000).

Additionally, the federal approach of delaying production of work product surveillance material until after the deposition of the subject of the surveillance is favored by leading commentators. 8 Charles Alan Wright, Arthur R. Miller, & Richard Marcus, Federal Practice and Procedure, § 2015 at 307-08 (3d ed. 2010) (citing Edward H. Cooper, Work Product of the Rulesmakers, 53 Minn. L. Rev. 1269, 1318 (1969)). In delaying production rather than denying production, the court preserves the impeachment value of the evidence yet allows all facts to be known to all parties before the trial. Donovan, supra, 252 F.R.D. at 82.

The trial court appeared to interpret the Jenkins Court's directive that a request for surveillance films "should be accompanied by a consent to be deposed after the movies have been taken and before the films must be presented" as requiring only that consent be given before the discovery is produced. Although

---

the other hand, if a court finds that a piece of evidence is impeachment evidence, it will delay ordering production of the evidence until after deposition. Donovan v. AXA Equitable Life Ins. Co., 252 F.R.D. 82, 82-83 (D. Mass. 2008); Martino v. Baker, 179 F.R.D. 588, 590 (D. Colo. 1998); Ward v. CSX Transp., 161 F.R.D. 38, 40-41 (E.D.N.C. 1995); Corrigan v. Methodist Hosp., 158 F.R.D. 54, 59 (E.D. Pa. 1994).

10

the phrase gives rise to some ambiguity, such an interpretation is not consistent with the Jenkins Court explicit reasoning that its "general rule" was intended to preserve the defendants' ability to find inconsistencies between testimony and the film, and the plaintiff's ability to challenge the accuracy of the film before trial. The mere consent to a later deposition after the film has been viewed by the plaintiff would not allow the benefit recognized in Jenkins, that is, the impeachment value of the film. Moreover, the Court required that the second deposition of the plaintiff be held before the films were turned over, which strongly buttresses this interpretation.

Of course, in Jenkins, the Court noted that the general rule it set forth that a party was entitled to surveillance video after it had been deposed was always subject to a trial court's discretion. Id. at 60. Nevertheless, discretion is never absolute but must be reasonable and not arbitrary or capricious. See Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 13 (2009). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies or rest[s] on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citations omitted). Put differently, "a functional approach to abuse of discretion examines whether there are good reasons for an appellate

11

court to defer to the particular decision at issue," which must not be "arbitrary, capricious, whimsical or manifestly unreasonable[.]" Ibid. (quoting Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999)).

In the present case, the trial court failed to explain its departure from the general principle of turning over surveillance evidence after the deposition announced in Jenkins. Although in Jenkins there had already been a deposition taken, the court directed that the films be provided after a second deposition limited to damages. Other than a slightly different procedural posture, we find no facts in the record that distinguish this case from Jenkins and would thus present a principled reason for a deviation in the general rule announced in Jenkins. This rule accommodated the needs of both parties to have all facts known before trial. While we recognize, as did the Jenkins Court, that there may be circumstances where that could not be accomplished by the general rule, none are found in the record here. Accordingly, we conclude that the trial court mistakenly exercised its discretion in departing from the Jenkins general rule.

Reversed and remanded for proceedings consistent with this opinion.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3683-14T2