**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2302-15T4

CHRISTIAN ANGELES,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

CARMEN I. NIEVES,

    Defendant-Appellant/
    Cross-Respondent.

_____

Argued October 24, 2017 — Decided June 28, 2018

Before Judges Carroll and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No.
L-5685-13.

Brian G. Steller argued the cause for
appellant/cross-respondent (Connell Foley,
LLP, attorneys; Brian G. Steller, of counsel
and on the briefs).

Steven P. Haddad argued the cause for
respondent/cross-appellant (Haddad Law
Offices, attorneys; Steven P. Haddad, of
counsel and on the brief; Nehal Modi, on the
brief).

PER CURIAM

After an auto accident, a jury found defendant Carmen I. Nieves liable and awarded plaintiff Christian Angeles a $3,000,000 judgment. Both parties appeal from a December 31, 2015 order. Defendant appeals the order's denial of her motion for a new trial. Plaintiff cross-appeals from the order's grant of a remittitur reducing the judgment to $1,100,000. We reverse the order denying a new trial, vacate the order granting the remittitur, and remand for a new trial.

## I.

Plaintiff testified that, on September 23, 2011, he was driving his two-door car on a two-lane avenue a block from his house in Perth Amboy when defendant, on a street with a stop sign, drove into the intersection and struck the passenger side of his car.[1] Photos showed a dent on the passenger door of plaintiff's car, and scratches on the front of defendant's car.

Plaintiff testified as follows. The impact pushed his car across the street, onto the sidewalk, and into a fence, causing his body to hit the driver's door. Plaintiff called the police, but did not request an ambulance or emergency treatment. Plaintiff drove home.

_____

[1] Defendant testified she stopped, looked both ways, and proceeded into the intersection at 5 m.p.h.

Plaintiff felt "some pain, a little bit of pain," in his neck, shoulder, and back. He went home and took a pill. The pain went away but returned when the medicine wore off. Two weeks later, when he could not take the pain anymore, he called a chiropractor. When the pain worsened, plaintiff went to the emergency room, where he was given medicine and crutches.

From October 17 to December 14, 2011, plaintiff received eleven chiropractic treatments with massages. From November 11, 2011, to June 8, 2012, he received twenty-one acupuncture treatments. On December 1, 2011, plaintiff went to a pain management specialist, Dr. Amit Poonia, who diagnosed him with pain, sprains/strains, radiculopathy, and disc displacement, prescribed medication, and gave him three epidural injections on March 16, April 13, and May 11, 2012, which enabled him to walk without crutches. In June 2012, plaintiff consulted with Dr. Carl Giordano, who recommended surgery. Plaintiff did not get surgery or seek any more medical treatment before the September 2015 trial.

Dr. Giordano testified the accident caused a herniated L3-L4 disc and a disc protrusion at L4-L5. He recommended a micro-discectomy. Plaintiff's expert, Dr. Wayne King, testified the accident caused herniated discs at L3-L4, L4-L5, and L5-S1. King also recommended surgery. Defendant's expert, Dr. Joseph Dryer, testified the herniated discs were due to degeneration.

Plaintiff testified as follows. Although his neck and shoulders improved, his pain in his lower back remained "between 9 and 10" on a scale of ten, and he still had pain in his leg and could not put much weight on it. "[A]fter the accident my life changed a lot because I have to stay home permanently because my back hurts a lot."

> My life has changed 75 percent. I cannot sit for a long period of time. I am a truck driver and I cannot work the same way I did before. . . . I cannot run. I cannot jump. . . . I cannot kneel . . . . I cannot even drive — well, if I ever drive it has to be on [pills] and it is with a great deal of pain.

Plaintiff testified he could not coach his kids in basketball, he could not take them to see the Pope during the papal visit, and he had problems during sex. Plaintiff's wife testified similarly, and added that plaintiff no longer did yard work, and couldn't play with the children.

Plaintiff filed his complaint in September 2013. After a four-day trial, the six jurors unanimously issued its verdict on September 30, 2015. The jury found that: plaintiff did not drive negligently; defendant drove negligently; defendant caused the collision; plaintiff sustained at least one permanent injury as a result; and the sum of money which would compensate him for his

4

pain, suffering, disability, impairment, and loss of enjoyment of life was $3,000,000.

Defendant filed a motion for new trial and/or remittitur. After hearing oral argument, the trial court issued a written opinion dated December 30, 2015, and the order dated December 31, 2015, denying a new trial but granting remittitur reducing the judgment to $1,100,000. Plaintiff accepted the remitted amount. Defendant appealed, and plaintiff cross-appealed.

II.

Defendant contends the trial court erred in precluding her from cross-examining plaintiff's claims of disability using photos of plaintiff engaging in athletic activities. "When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016) (alteration in original) (citations omitted). Thus, an appellate court "will reverse an evidentiary ruling only if it 'was so wide off the mark that a manifest denial of justice resulted.'" Ibid. (citation omitted). We must hew to that standard of review.

As set forth above, plaintiff and his wife testified about how disabled he was as a result of the evidence. Defense counsel also cross-examined about plaintiff's working out at the gym.

Plaintiff's wife testified plaintiff "can't go to the gym anymore" since the accident and "d[id]n't go anymore." Plaintiff testified that before the accident, "I used to work out," but now "I can't."

Defense counsel then asked plaintiff if he maintained a Facebook account. Plaintiff objected. At sidebar, defense counsel showed the trial court screenshots from plaintiff's Facebook page dated January 15, 2013. One screenshot showed plaintiff in a sleeveless shirt and sweatpants at a gym near exercise equipment, with a photo caption "In order to maintain the artistic action figure."

The trial court asked if defense counsel had made plaintiff's counsel aware defense counsel was going to use Facebook. Defense counsel replied: "No, just — just for cross-examination, Judge." When defense counsel explained the photo showed plaintiff at the gym working out, the court mistakenly responded that plaintiff had testified "yes, I do work out." The court stated it was "very concerned about the prejudicial aspect of" the gym photo, and sustained the objection.

Defendant attached the gym photo to her motion for a new trial, as well as other screenshots from plaintiff's Facebook page. A screenshot dated October 3, 2012, showed plaintiff wearing a life preserver standing on the edge of a beach a few feet in front of a "WaveRunner" (a brand of large jet-ski). A screenshot

dated June 16, 2013, showed plaintiff in a short wetsuit sitting on a WaveRunner, with the photo caption "In water hesitating."[2]

In his response to the motion for a new trial, plaintiff argued his Facebook page was not public. On appeal, plaintiff does not dispute the photos were obtained from his publicly-accessible Facebook profile page. Cf. Robertelli v. N.J. Office of Atty. Ethics, 224 N.J. 470, 487 (2016).

In its written opinion denying defendant's motion for a new trial, the trial court quoted the rules governing the admission of relevant evidence and the exclusion of unduly prejudicial evidence, N.J.R.E. 401, 402, and 403. The court then ruled:

> Viewing the evidence in the light most favorable to the non-moving party, Mr. Angeles, the Facebook content had limited probative value. The photographs showed Mr. Angeles standing or sitting near athletic equipment. There was a lack of authentication and foundation. Conversely, the surprise to Mr. Angeles was profound: the prejudice level, potentially high. The jury might well have wondered what Mr. Angeles was doing in a gym in the first place.

---

[2] Plaintiff notes the trial transcript contains no mention of the WaveRunner photos. Defendant responds that defense counsel's efforts to use the photos were prematurely precluded by the court at trial. On defendant's motion for a new trial, the trial court stated it had ruled both the gym photo and the WaveRunner photos could not be shown to the jury. Thus, we consider both the gym photo and WaveRunner photo.

Defendant challenges each of the trial court's rationales. First, in determining the probative value of evidence, it is inappropriate to view the evidence "in the light most favorable to the non-moving party."[3]  Rather, under N.J.R.E. 401, "[t]he 'test [of relevancy] is broad and favors admissibility[.]'" State v. Schnabel, 196 N.J. 116, 131 (2008) (alteration in original) (citation omitted).  Moreover, "[t]he burden lies with the party seeking exclusion of the evidence to show that the probative value is substantially outweighed by one or more of the factors listed in [N.J.R.E.] 403." McLean v. Liberty Health Sys., 430 N.J. Super. 156, 167 (App. Div. 2013); see Rosenblit v. Zimmerman, 166 N.J. 391, 410 (2001) ("The burden is clearly on the party urging the exclusion of evidence[.]" (quoting Biunno, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 403 (1999-2000))).  "A reviewing court will not defer to a trial court if its decision '"'is based on a mistaken understanding of the applicable law.'"'" Mernick v. McCutchen, 442 N.J. Super. 196, 199 (App. Div. 2015) (quoting C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014)).

Second, the excluded evidence was relevant.  The January 15, 2003 photo showing plaintiff at a gym directly contradicted the testimony by plaintiff's wife that after the September 23, 2011

---

[3] That is the standard for summary judgment. Qian v. Toll Bros. Inc., 223 N.J. 124, 134-35 (2015).

accident plaintiff could not and did not go to the gym. Moreover, the photo of plaintiff at the gym in exercise clothes, bearing the caption "[i]n order to maintain the artistic action figure," supported a reasonable inference that plaintiff was working out at the gym, in direct contradiction to plaintiff's testimony that after the accident he could not work out.

Similarly, the October 3, 2012 and June 16, 2013 photos showing plaintiff, wearing wetsuits or life preservers, sitting on or standing near WaveRunners in or near the water, raised a reasonable inference that plaintiff was riding the WaveRunners. Thus, those photos, and the January 15, 2013 photo of plaintiff at the gym, were inconsistent with plaintiff's overall testimony that after the accident he "had to stay home permanently because my back hurts a lot," and that he could not engage in modest physical activities or drive a vehicle without a great deal of pain.

Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. That standard "is generous: if the evidence makes a desired inference more probable than it would be if the evidence were not admitted, then the required logical connection has been satisfied." State v. Williams, 190 N.J. 114, 123 (2007). "[I]f evidence does support the existence of a

specific fact, even obliquely, it is relevant and admissible." Verdicchio v. Ricca, 179 N.J. 1, 34 (2004); see N.J.R.E. 402. If the photos were taken after the accident, as defendant contended, the photos tended to disprove plaintiff's claims of disability by making more probable the inference that he was able to engage in vigorous physical activity.

Third, post-accident photos of plaintiff apparently engaged in strenuous activity would have substantial probative value. "Probative value 'is the tendency of the evidence to establish the proposition that it is offered to prove.'" State v. Buckley, 216 N.J. 249, 261 (2013) (citation omitted). Motion pictures which "actually portray plaintiff engaged in some strenuous activity which on deposition she had already testified is beyond her capacity" is valuable evidence to deflate a plaintiff's claim. Jenkins v. Rainner, 69 N.J. 50, 58 (1976); Mernick, 442 N.J. Super. at 202. Still photos are also telling, especially as plaintiff added a caption stating he is at the gym "to maintain [his] artistic action figure."

Although the photos depicted plaintiff standing near the gym equipment and WaveRunner and sitting on a WaveRunner, rather than actually working out or riding the WaveRunner, the gym and WaveRunner photos showed plaintiff dressed to work out and to ride a WaveRunner, respectively. His attire, and the captions he gave

the pictures, strongly support the inference he was engaged in those strenuous activities.

The trial court expressed concern the gym photo might have caused the jury to wonder what plaintiff was doing in a gym. However, that was no reason to preclude use of the photos on cross-examination. Cross-examination "is the 'greatest legal engine ever invented for the discovery of truth.'" State v. Cope, 224 N.J. 530, 555 (2016) (quoting California v. Green, 399 U.S. 149, 158 (1970)). If the photos cast doubt on plaintiff's claim of disability, they "could have undermined" that claim and "cast doubt on [his] general veracity and capacity to tell the truth." See State v. Castagna, 187 N.J. 293, 311 (2006).

Moreover, plaintiff would have had the opportunity on cross- or redirect examination to explain what he was doing in a gym or with WaveRunners, or to dispute when the photos were taken, and the jury would have had the opportunity to evaluate the credibility of his answer. Any subsequent concern about speculation "could have been ameliorated with a limiting instruction to the jury." See Davis v. Barkaszi, 424 N.J. Super. 129, 142 (App. Div. 2012).

Fourth, relevant evidence may be excluded only "if its probative value is substantially outweighed by the risk of (a) undue prejudice." N.J.R.E. 403. This standard was not satisfied by the trial court's statements that it was "very concerned about

the prejudicial aspect" or that "the prejudice level [was] potentially high." "The mere possibility that evidence could be prejudicial does not justify its exclusion." State v. Morton, 155 N.J. 383, 453-54 (1998). "It is not enough for the opposing party to show that the evidence could be prejudicial[.]" State v. Cole, 229 N.J. 430, 448 (2017).

Crucially, the trial court did not identify any prejudice from the photos other than their probative value in disproving plaintiff's disability claim. "Even when evidence is 'highly damaging' to a [plaintiff's] case, 'this cannot by itself be a reason to exclude otherwise admissible and probative evidence.'" State v. Brockington, 439 N.J. Super. 311, 333 (App. Div. 2015) (citation omitted). "[T]he question is not whether the challenged testimony will be prejudicial to the objecting party, 'but whether it will be unfairly so.'" Griffin, 225 N.J. at 421 (quoting Stigliano v. Connaught Labs., 140 N.J. 305, 317 (1995)). "We would ill-serve the cause of truth and justice if we were to exclude relevant and credible evidence only because it might help one side and adversely affect the other." Stigliano, 140 N.J. at 317.

"'Evidence claimed to be unduly prejudicial is excluded only when its "probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity

to divert the minds of the jurors from a reasonable and fair evaluation" of the issues in the case.'" Griffin, 225 N.J. at 421 (alteration in original) (citations omitted). There was nothing inflammatory in the photos of the smiling plaintiff in exercise clothes near exercise equipment. The photos would not divert the jury from the issues, as they directly addressed the issue of whether plaintiff was as disabled as he claimed.

We recognize that "[t]he trial court is granted broad discretion in determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999). However, the photos were not inflammatory and there was no unfair prejudice to weigh. Cf. id. at 501-02 (finding the trial court abused its discretion in admitting evidence whose probative value "was substantially outweighed by its exceedingly inflammatory nature").

Moreover, the trial court agreed the photos had probative value. Even if the photos' probative value was "limited" as the court stated, there was no undue prejudice by which the photos' probative value could be outweighed, let alone substantially outweighed. Thus, "[w]e find no support for the invocation of N.J.R.E. 403(a) as the means for excluding this evidence." See State v. Hockett, 443 N.J. Super. 605, 615 (App. Div. 2016)

(reversing exclusion of photos inconsistent with a witness's testimony). "In sum, we conclude that the trial court's decision to bar [the photos under N.J.R.E. 403] was an abuse of discretion." See Griffin, 225 N.J. at 422-23.

Fifth, in denying a new trial, the trial court also stated "there was a lack of authentication and foundation." Neither objection was raised at trial, and plaintiff on appeal does not challenge the authenticity of the photos. See Hockett, 443 N.J. Super. at 614 (finding that, by claiming prejudice and "failing to otherwise object, the prosecution tacitly acknowledged the photographs actually depicted what the defense claimed").

Moreover, defendant sought to use the photos to cross-examine plaintiff. Authentication and foundation are preconditions for the admission of evidence. N.J.R.E. 901; Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 611 at 666 (2018). By contrast, "documents that are not going to be admitted into evidence, or do not need to be admissible, need not be authenticated." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 901 (2018) (citing Plaza 12 Assocs. v. Carteret Borough, 280 N.J. Super. 471, 477-78 (App. Div. 1995)). "Impeachment of a witness' credibility need not be limited to evidence adduced at trial." Delgaudio v. Rodriquera,

280 N.J. Super. 135, 141 (App. Div. 1995) (citing State v. Martini, 131 N.J. 176, 255 (1993)).

In any event, defense counsel began to ask plaintiff if he maintained a Facebook account, but further questioning was precluded when the trial court expressed concern over prejudice and sustained the objection. Had the inquiry not been interrupted, defense counsel could have asked plaintiff further questions to establish that the photos and their captions came from plaintiff's Facebook account. "Authenticity can be established by direct proof — such as testimony by the author admitting authenticity[.]" State v. Hannah, 448 N.J. Super. 78, 90 (App. Div. 2016).

Moreover, the requisite showing "'may be made circumstantially.'" Ibid. (citation omitted). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." N.J.R.E. 901. "Authentication '"does not require absolute certainty or conclusive proof" — only "a prima facie showing of authenticity" is required.'" Hannah, 448 N.J. Super. at 89 (citations omitted).

There was evidence supporting a prima facie showing that the photos were authentic. As the trial court acknowledged, the gym photo depicted plaintiff. It is undisputed that the WaveRunner photos also depicted plaintiff. Each of the photos were on

Facebook screenshots showing the header "Christian R. Angeles" and a profile picture, comments by other Facebook subscribers on the photos, and replies bearing plaintiff's header and the profile picture. This evidence could have been "sufficient to meet the low burden imposed by our authentication rules." Id. at 90-91 (finding a tweet was authenticated by its use of the defendant's Twitter handle, her profile photo, the content of the tweet, its nature as a reply, and trial testimony).

As to foundation, our Supreme Court has remarked:

> the persuasive representational nature of photographs demands that the foundation for the admission of photographs must be properly laid. We have stated the rule as follows: "'[t]he authentication of photographic evidence prior to its admission seems to contemplate proof that the photograph is a substantially correct representation of the matters offered in evidence, and this includes an identification or statement as to what the photograph shows.'"
>
> [Brenman v. Demello, 191 N.J. 18, 30 (2007) (alteration in original) (quoting State v. Wilson, 135 N.J. 4, 14 (1994)).]

Again, had defense counsel been permitted to question plaintiff further, it seems likely that plaintiff, who was depicted in each of the photos, wrote the captions for the photos, and posted them on his Facebook page, could "identify the persons, places, or things shown in the photograph[s]," and state whether the photos were a substantially correct representation of the

"event that was the subject of testimony," namely plaintiff's activities at the gym and with the WaveRunners. <u>Wilson</u>, 135 N.J. at 14, 18. "'[A]ny person with knowledge of the facts represented in the photograph may authenticate it.'" <u>Hockett</u>, 443 N.J. Super. at 613 (citation omitted).

Plaintiff argued the dates the photos were taken were unknown. Even if the date was at issue, "the better course was for the judge, in his gatekeeping role, to . . . leave for the factfinder a 'more intense review' of the photographs and the credibility of the authenticating witness." <u>Id.</u> at 614-15 (quoting Biunno, Weissbard & Zegas, <u>Current N.J. Rules of Evidence</u>, comment 1 on N.J.R.E. 901 (2015)).

Sixth, the trial court stated "the surprise to [plaintiff] was profound." The court cited <u>Persley v. N.J. Transit Bus Operations</u>, 357 N.J. Super. 1 (App. Div. 2003), where we noted "unfair surprise" was a factor in determining whether "[a] motion picture of a reconstruction of a particular event may be admitted into evidence." <u>Id.</u> at 14, 15. However, <u>Persley</u> involved a computer-generated, animated, video simulation of an accident created by the defense. <u>Id.</u> at 4, 8. Here, by contrast, plaintiff posed for the photos, wrote the captions for the photos, posted them on his Facebook page, and replied to comments about the photos. Thus, he was well aware of the existence and content of

the photos.  See Hayes v. Delamotte, 231 N.J. 373, 391 (2018) ("A party's use of evidence in its closing argument cannot be an 'unfair surprise' to the adverse party that properly produced, introduced, and admitted the same evidence at trial.").

Although plaintiff posted the photos on his public Facebook page, he may have been surprised defendant was using the photos at trial, because she did not produce them in discovery.  However, the trial court did not state it was excluding the photos as a discovery sanction.

Nonetheless, plaintiff argues we may affirm on any appropriate ground even if it is not the ground relied on by the trial court.  Plaintiff cites Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175 (1968), which ruled: "It is a commonplace of appellate review that if the order of the lower tribunal is valid, the fact that it was predicated upon an incorrect basis will not stand in the way of its affirmance."

We agree with plaintiff that defendant had a continuing obligation to produce the photos in discovery.  Plaintiff's complaint demanded defendant produce documents, including "all photographs . . . obtained regarding the [P]laintiff." Plaintiff's complaint also demanded defendant answer the "Uniform Interrogatories, Form C," which includes questions seeking information about "any photographs . . . made with respect to

anything that is relevant to the subject matter of the complaint," and "any statements or admissions [by plaintiff] as to the subject matter of this lawsuit," which encompassed the captions. It is not "ground for objection that the examining party has knowledge of the matters as to which discovery is sought." R. 4:10-2(a).

Nonetheless, a discovery violation does not necessarily justify the exclusion of proffered evidence. "[A]lthough it is the policy of the law that discovery rules be complied with, it is also the rule that drastic sanctions should be imposed only sparingly." Zaccardi v. Becker, 88 N.J. 245, 253 (1982). The exclusion of relevant evidence "'is a drastic remedy and should be applied only after other alternatives are fully explored[.]'" State v. Washington, 453 N.J. Super. 164, 190 (App. Div.) (citation omitted), appeal denied, __ N.J. __ (2018). Before invoking that sanction, "'the court should explore alternatives.'" Ibid. (citation omitted).

To support her argument that exclusion was the proper remedy, plaintiff claims the circumstances are analogous to Jenkins. There, the defendants' investigator conducted covert surveillance of the plaintiff, taking motion pictures to show she was feigning injury, but the defendants refused to disclose the movies or the circumstances under which they were taken. 69 N.J. at 52-53, 55-56. Our Supreme Court required disclosure, reasoning: "It is no

more unlikely that a defendant may resort to chicanery in fabricating motion pictures of one alleged to be the plaintiff than it is that a plaintiff may indeed be a faker." Id. at 57. "If [the movie] is unleashed at the time of trial, the opportunity for an adversary to protect against its damaging inference by attacking the integrity of the film and developing counter-evidence is gone or at least greatly diminished." Id. at 57-58.

Here, by contrast, having posed for the photos, captioned them, and posted them on his Facebook page, plaintiff already knew better than defendant "where, when, how often and under what circumstances the [photos] were taken." Id. at 53, 59. Under those circumstances, there was no claim that defendant had resorted to chicanery by fabricating the photos or captions. Indeed, no suggestion is made that plaintiff had any basis for attacking the integrity of the photos.

Moreover, plaintiff has not suggested any other counter-evidence he could have offered other than his own testimony. Plaintiff was present and available to testify about where, when, and under what circumstances he posed for the photos, captioned them, and posted them. Any surprise to plaintiff's counsel could have been adequately addressed by a recess to allow consultation with plaintiff and examination of his Facebook page. Thus, total

20 <span>A-2302-15T4</span>

exclusion of the photos would not have been an appropriate discovery sanction.

Accordingly, there was no basis to exclude the photos. As the photos had substantial probative value to rebut plaintiff's claim of disability, their exclusion "was clearly capable of producing an unjust result." R. 2:10-2. That the exclusion was prejudicial was evidenced by the $3,000,000 verdict based on plaintiff's unrebutted claim of disability. See Rosenblit, 166 N.J. at 410 (finding prejudice based on the damage award in another case). In any event, plaintiff cannot show that the exclusion of the photos was harmless. Accordingly, we reverse and remand for a new trial.[4]

III.

Defendant also contends a new trial is required by remarks by plaintiff's counsel during his closing argument. The remarks referred to an objection during plaintiff's direct testimony.

During plaintiff's direct examination, after eliciting Dr. Giordano's recommendation to have surgery, plaintiff's counsel asked "did you undergo the surgery," and plaintiff said "I didn't

---

[4] We need not reach defendant's contention it was plain error for the trial court not to have a hearing under N.J.R.E. 104 to determine the admissibility of the photos. See Kemp v. State, 174 N.J. 412, 432-33 (2002).

because I didn't have the money." Defense counsel objected, but the trial court believed plaintiff had said only "I didn't."[5] Plaintiff's counsel asked plaintiff "why didn't you have the surgery," and defense counsel again objected, pointing out that plaintiff had previously gratuitously volunteered that persons of his ethnicity "have to pay a lot for healthcare." The court told plaintiff's counsel he would have to lead plaintiff "if he's going to say something about . . . the lack of insurance or money." Instead, plaintiff's counsel questioned plaintiff about other topics.

In his closing argument, plaintiff's counsel argued defense counsel "made a big deal towards the end of his summation about [plaintiff] never having surgery. If you'll recall, I asked him the question and he was cut off because of an objection." The trial court sustained defense counsel's objection. Plaintiff's counsel argued to the jury "the reason he didn't have the surgery, we're not able to find out," and then moved on.

We do not condone plaintiff's counsel's remarks, which "are not to be repeated on retrial." <u>Rodd v. Raritan Radiologic Assocs.</u>, 373 N.J. Super. 154, 172 (App. Div. 2004). However, we find no reversible error. Defendant notes that attorneys "may not

---

[5] Plaintiff asserts the objection cut off the interpreter before translating plaintiff's use of the word "dinero."

use disparaging language to discredit the opposing party, or witness, or accuse a party's attorney of wanting the jury to evaluate the evidence unfairly, of trying to deceive the jury, or of deliberately distorting the evidence." Id. at 171. However, plaintiff's counsel did not use disparaging language or make any such accusations. Cf. ibid. (plaintiff's counsel accused defendant doctor of caring more about making money and defendant's expert of adjusting his testimony); Szczecina v. PV Holding Corp., 414 N.J. Super. 173, 184 (App. Div. 2010) (plaintiff's counsel "unwarrantedly and inappropriately accused the entire defense of spinning the evidence").

Moreover, the trial court sustained defendant's objection to the initial remark in closing. Defendant did not object to the second remark or seek any other relief from either remark. Moreover, the court instructed the jury that "what the attorneys say is not evidence and their comments are not binding on you," and that it was the jury's recollection of the evidence which controls. Accordingly, we reject this claim.

### IV.

Finally, defendant argues we should order a new trial because the remitted $1,100,000 verdict was against the weight of the evidence. As we have already ordered a new trial based on the exclusion of the photos, we need not address this claim.

Similarly, we need not reach plaintiff's cross-appeal arguing the remittitur was an abuse of discretion. Because the exclusion of the photos requires that we vacate the jury's verdict, we could not reinstate the jury's $3,000,000 verdict even if the remittitur was an abuse of discretion.

We also decline to review the validity of the remittitur because the trial court's remittitur ruling was based in part on Supreme Court case law that our Court has since overturned. The trial court relied on He v. Miller, 207 N.J. 230 (2011). "The He Court held that a trial judge could rely on both his personal knowledge of verdicts as a practicing attorney and jurist and 'comparable' verdicts presented by the parties in deciding a remittitur motion." Cuevas v. Wentworth Grp., 226 N.J. 480, 486 (2016); see He, 207 N.J. at 255-57. Relying on He, the trial court here cited verdicts reported throughout the State, and verdicts "which with the court is familiar."

However, after the trial court's December 2015 remittitur ruling, the Supreme Court in 2016 "conclude[d] that such an approach is not sound in principle or workable in practice." Cuevas, 226 N.J. at 486; see id. at 503-09. In Cuevas, the Court held that "a judge's personal experiences with seemingly similar cases while in practice and on the bench are not relevant in deciding a remittitur motion." Id. at 505. The Court also held

24

"that the comparison of supposedly similar verdicts to assess whether a particular damages award is excessive is ultimately a futile exercise that should be abandoned." Ibid. Thus, in Cuevas, the "Court rejected many aspects of its earlier holding in He." Krzykalski v. Tindall, 448 N.J. Super. 1, 5 n.3 (App. Div. 2016), aff'd, 232 N.J. 525 (2018).

As we have already granted a new trial on other grounds, it would be pointless to review the trial court's remittitur ruling based in part on the overruled aspects of He. Remittitur should be addressed in the first instance by the trial court applying the proper standard.[6] If a remittitur motion is filed after the retrial, the trial court should apply current law, including Cuevas.

---

[6] "[A]n appellate court must pay some deference to a trial judge's 'feel of the case' . . . because '[i]t is the judge who sees the jurors wince, weep, snicker, avert their eyes, or shake their heads in disbelief,' who may know 'whether the jury's verdict was motivated by improper influences,' and who may be privy to observations that could not have been made by the jury." Cuevas, 226 N.J. at 501-02 (citations omitted). Here, the trial court cited such factors, including plaintiff's interjection before the jury about his inability to afford healthcare. The court also cited plaintiff's apparent lack of pain and discomfort while testifying, but "[a] judge's 'feel of the case' based on observing a party or a witness in the courtroom is entitled to minimal weight if the jury had the same opportunity to make similar observations." Id. at 502 (citation omitted).

We reverse the order denying a new trial, vacate the jury's verdict, and remand for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION