# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1208-19T2

C.J.C.,

    Plaintiff-Respondent,

v.

K.A.M.,

    Defendant-Appellant.

_____

        Submitted November 17, 2020 – Decided December 3, 2020

        Before Judges Fisher and Moynihan.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-0237-20.

        Helmer, Conley & Kasselman, PA, attorneys for appellant (Patricia B. Quelch, of counsel and on the brief).

        Respondent has not filed a brief.

PER CURIAM

Plaintiff C.J.C. (Carl) and defendant K.A.M. (Kathy) resided together, raising two children, for approximately five years – a period interrupted only for a time when Carl was incarcerated. At the end of June 2019, their relationship ended and Carl was asked to leave their apartment; Carl vacated the premises on August 4, 2019. Two days later, Carl took the children to the doctor. After the appointment, he reached out to Kathy, telling her they needed to talk. Carl arrived at Kathy's apartment, where a physical encounter took place. Claiming he was assaulted by Kathy and harassed by her telephone calls that soon followed, Carl filed a complaint against Kathy under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. Kathy filed a similar complaint against Carl, alleging an assault, harassment, criminal mischief, and criminal trespass.

The parties' complaints were the subject of a five-day hearing in September and October 2019, during which Judge Deborah L. Gramiccioni heard from numerous witnesses. On October 7, 2019, the last hearing day, the judge rendered thorough factual findings during the course of a lengthy and comprehensive oral decision. The judge explained in great detail why she found Carl to be far more credible than Kathy about the events on which their complaints were based.

Kathy's version, according to the judge, "completely fell apart under cross[-]examination as contrasted with [Carl's] version which held up completely under cross[-]examination." For example, there was no genuine question about whether Kathy kicked Carl in the neck. As the judge found, Kathy asserted during her direct testimony that she kicked Carl in self-defense but during cross-examination she acknowledged she kicked him out of frustration. The judge also explained that while Kathy called numerous other witnesses, and that those found credible did not corroborate Kathy's version, other witnesses were either biased or gave testimony unworthy of being credited.

Based on what came from credible witnesses, the judge determined that, on the day in question, Carl approached Kathy to speak about their daughter's well-being. Kathy was holding a phone and Carl admitted that he grabbed the phone from her hand. But then, as the judge found, based on Carl's credible and "vivid" description, Kathy

> threw an overhand closed fisted punch which did land on the side of [Carl's] face, . . . a hugely disproportionate response to [Carl's] grabbing of the cell phone.

Carl has a prosthetic leg, and the judge found that Kathy's foot then came into contact with the back of Carl's knee, causing him to "tumble down the stairs." She then "threw a high kick into his throat connecting with [the] left side of his

3

neck," an act the judge found to be "purposeful . . . not reckless." The judge rejected Kathy's testimony, which fizzled out on cross-examination, that the kick was an act of self-defense.

Later that same evening, Kathy telephoned Carl numerous times and – according to the judge's findings, based on recordings made by Carl – Kathy was "very aggressive" and at times "screaming" at Carl. During these calls, Kathy admitted to punching Carl in the throat, and she called him, among other things, "a jackass," "a psychopath," "a stupid mother[]fucker," and "a fuckin' piece of shit." According to the judge, Kathy was "barely" able to contain her anger, which "almost boil[ed] over in rage." Kathy also admitted during those calls that after the fall down the stairs, she kicked him "the fuck back down."

We need not go on. Based on this and other evidence found credible, the judge found Kathy was the aggressor throughout these events. The judge concluded that Carl sustained his burden of proving the predicate acts of harassment and assault and that Kathy failed to sustain her burden of proving the predicate acts she alleged. The judge's view of the testimony and the credibility of the witnesses commands our deference because the judge had the opportunity to see and hear the witnesses testify, while we only have a transcript to consider. See Cesare v. Cesare, 154 N.J. 394, 412 (1998).

4

Before entering a final restraining order (FRO) based on the predicate acts of assault and harassment, the judge considered the second so-called <u>Silver</u> factor, which requires a finding that an FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." <u>Silver v. Silver</u>, 387 N.J. Super. 112, 127 (App. Div. 2006) (relying on N.J.S.A. 2C:25-29(a) and (b)). Judge Gramiccioni correctly observed that when the proven predicate act is a physical assault, like the assault here, the presence of the second factor is self-evident, <u>ibid.</u> (recognizing that this factor "is most often perfunctory and self-evident"); <u>see also</u> <u>A.M.C. v. P.B.</u>, 447 N.J. Super. 402, 414 (App. Div. 2016). But the judge also credited evidence that Kathy had been violent toward Carl in the past in concluding an FRO was needed to prevent further abuse.

Based on these and other findings, the judge entered an FRO in Carl's favor and dismissed Kathy's complaint. In later proceedings, the judge awarded Carl $16,286.67 in counsel fees.

In appealing the FRO and the counsel fee order,[1] Kathy argues that: (1) the trial judge's "findings of credibility are not entitled to deference"; (2) the judge erred by admitting "the photograph of [Carl] and the partial recordings of

---

[1]  Kathy does not argue that the judge erred in dismissing her complaint but, even if she were, we would find such an argument lacking in sufficient merit to warrant further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

telephone conversations" between Carl and Kathy; (3) "the evidence did not support the issuance of an FRO" against Kathy; and (4) if the FRO is affirmed, "the amount of the attorney's fees awarded is excessive." We find insufficient merit in Kathy's first and third arguments to warrant further discussion in this opinion. R. 2:11-3(e)(1)(E). We reject her fourth argument about counsel fees substantially for the reasons set forth in Judge Gramiccioni's written opinion on that subject.

We also find no merit in Kathy's second argument. Kathy contends that a photograph – offered to show the marks on Carl's neck caused by her kick – was not adequately authenticated. She argues that "[t]he photograph is not the original" and there is "no indication of the date the photograph was taken." Her argument misapprehends the guiding standards.

The proponent of a photograph must make a prima facie showing of its authenticity, State v. Joseph, 426 N.J. Super. 204, 220 (App. Div. 2012), a burden "not designed to be onerous," State v. Hockett, 443 N.J. Super. 605, 613 (App. Div. 2016). It is enough if the record contains sufficient evidence to support the claim that the photograph depicts "what its proponent claims." N.J.R.E. 901. Carl testified that the image offered into evidence was taken on August 6, 2019, and that it depicted the injuries to his neck caused by Kathy's

kick. Based on this testimony alone, the judge was entitled to admit the photograph and, in considering her ruling, we find no abuse of discretion. See Brenman v. Demello, 191 N.J. 18, 31 (2007). Indeed, the admission of the photograph – even if we could somehow assume the judge erred in admitting it – caused no harm or prejudice because, as Kathy acknowledges in her appeal brief, she had admitted that "she kicked [Carl's] neck."

Kathy also argues that the audio recordings captured by Carl of her later phone calls – the content of which we have briefly alluded – should not have been admitted because she believes that they too were not properly authenticated and were incomplete. Much has been written about the admissibility of audio recordings in criminal matters and the multi-part test devised by the Court in State v. Driver, 38 N.J. 255, 287 (1962), but even in criminal matters the test is not so rigid as to preclude the admission of audio recordings even when they are incomplete or partially inaudible, see State v. Nantambu, 221 N.J. 390, 404-11 (2015). Kathy did not deny at the hearing that it was her voice on the recordings, and she did not argue that the recordings were altered, only that what Carl presented was incomplete. We reject that contention.

Kathy argues in this court that the judge admitted "partial recordings." That's not accurate. What the record reveals is that, at the outset of the hearing,

Carl offered selected portions of the phone calls he recorded. When Kathy's counsel objected to their completeness, Carl then produced <u>all</u> his recordings, which were played for the court during the thorough voir dire. Notwithstanding that full turnover, Kathy's counsel continued to press the objection at the hearing that the recordings were incomplete, but this was based only on the fact that, as Carl testified, he did not immediately start recording one conversation until ten minutes elapsed. That circumstance doesn't make the recordings incomplete. It just means the complete recording did not contain the complete conversation. The trial judge soundly admitted into evidence only the complete version, not the edited portions offered earlier in the proceedings.

To the extent Kathy's argument at the hearing about admission of the recordings had any substance at all, it only went to the weight of the recorded evidence, not its admissibility. We find no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION