# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2056-22

D.E.H.,

    Plaintiff-Respondent,

v.

B.W.M.,

    Defendant-Appellant.

_____

> Submitted March 11, 2024 – Decided August 20, 2024
>
> Before Judges Berdote Byrne and Bishop-Thompson.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2199-23.
>
> Afonso Archie, PC, attorneys for appellant (Troy A. Archie, of counsel and on the brief).
>
> Respondent has not filed a brief.

PER CURIAM

Defendant B.W.M.[1] challenges a February 22, 2023 final restraining order (FRO) granted to plaintiff D.E.H. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the trial court erred in finding that he committed the predicate act of assault and in not providing the factual findings and legal conclusion for its ruling. Having reviewed the record, we reject defendant's arguments and affirm.

I.

We discern the facts adduced at the one-day FRO trial. Both parties testified and only defendant was represented by counsel.

Plaintiff and defendant met online and were in a dating relationship. According to plaintiff, on January 19, 2023, she met defendant after work. They drove to defendant's college in his car because he wanted to speak with his professors.

After leaving the college, they went to a park in Brooklawn. While in the parked car, defendant wanted to be "intimate." Plaintiff claimed that she did not want to be intimate after defendant opened his cellphone and she saw his

---

[1] We identify the parties by initials to protect the identity of the victim of domestic violence. R. 1:38-3(d).

A-2056-22

Instagram with photographs of half-naked women. Plaintiff wanted to talk to defendant about those photographs because that was not the first time she saw that content on his cellphone. Defendant restated that he wanted to be intimate and moved to the backseat of the car. Plaintiff remained in the front seat and insisted they talk.

According to plaintiff, defendant said he would talk about the photographs "at some point" but wanted to be intimate first because it "calmed him down." Plaintiff agreed. Shortly after starting to become intimate, plaintiff stopped because defendant "was not showing [her] affection."

According to plaintiff, her conduct upset defendant, who told her: "So, you would like to f[***]. So[,] you would ask to f[***] a man you like but then you are not going to ask the man you don't like to stop?" Plaintiff explained that defendant was upset because she had a brief intimate relationship with another man when she and defendant briefly ended their relationship. Plaintiff said that she apologized to defendant because she did not know what else to do.

Defendant thereafter became aggressive, "put his hands on [her] multiple times," punched, and choked her. Plaintiff testified that she had marks on her neck and ear and bruises on her right shoulder from defendant pushing her into the passenger door, which was supported by a photograph that had been marked

3

for identification but not admitted into evidence. Defendant made no objection regarding the photograph.

When plaintiff rolled down the car window to get help, defendant stopped choking her. In response to plaintiff yelling for help, defendant said: "I'm going to show you . . . how sluts and ho[e]s are [ ] treated." At that time, plaintiff was not wearing pants or shoes. Defendant took plaintiff's keys and phone, did not allow her to get dressed, and threatened to push her out of the car. Plaintiff stated that she did "everything" that she could stay in defendant's car.

Plaintiff testified defendant "sexually assault[ed] [her] by touching [her]," "tried to make [her] do lots of stuff," tried to touch her "[genitals]," and "put his finger up her [rectum]." Plaintiff asked defendant to stop but he did not. Defendant continued touching plaintiff until he ejaculated on his sweatshirt. Plaintiff claimed defendant then calmed down and apologized. They left the park and drove to plaintiff's car. Plaintiff then drove home. Several days later, plaintiff sought and obtained a temporary restraining order (TRO), alleging assault.

At trial, plaintiff testified that she did not feel safe because defendant knew she was five months pregnant and had been violent towards her. Plaintiff

4

also stated defendant had threatened to hurt her and her family. Defendant also appeared at plaintiff's workplace after she told him not to come.

At trial, defendant testified that he asked plaintiff to go to campus with him. He waited for plaintiff, she got out of her car, and they drove to campus together in his car. When they arrived, defendant went to speak with his professor and plaintiff went to the bathroom. After speaking with a professor at the end of the class, defendant had a conversation with a "lady" from the class about what he missed and the coursework. Following that conversation, the parties walked outside. Defendant told plaintiff he should have asked for the classmate's phone number because he needed more information about the class. According to defendant, plaintiff punched him twice in the chest.

They walked back to defendant's car and had a conversation about how defendant's conversation with the female classmate made plaintiff feel. They got food and found a private place at the park in Brooklawn to have a conversation. Defendant parked the car, turned on the radio, and "hopped" into the back seat.

As defendant was scrolling through his Instagram, plaintiff "hopped" in the backseat and asked defendant why he was on his cellphone. Defendant

claimed plaintiff stated: "Oh, you talking to those girls again. Hand me the phone or we're over." Defendant replied: "You're not getting my phone."

Plaintiff became mad and said: "Why not, I [have given] you my phone; I let you do this, I let you do that." Defendant claimed plaintiff "dug" into his hand, causing him to drop his phone. He denied choking plaintiff and claimed that he was trying to push her off him. Defendant let plaintiff go after she calmed down.

Defendant testified that plaintiff "grabbed" his phone and went through his Instagram and unfollowed women. While "constantly" yelling, plaintiff said: "I don't feel comfortable with you talking to other girls, you cheated on me in the past."

At the trial, defendant testified plaintiff said they could "get over this" and then she wanted to have sex. He "gently" moved plaintiff off him, and plaintiff resumed yelling. According to defendant, he repeatedly asked plaintiff to get out of his car. But plaintiff remained in the car and told defendant why she was still mad.

A Brooklawn police officer drove by defendant's car. Defendant told plaintiff he did not want a "problem" with her, she was "acting crazy," and if she had a problem the police were present. Again, he asked plaintiff to get out

6

of his car.  They calmed down and defendant hopped back in the front seat. Plaintiff followed him to the front seat, and he dropped plaintiff off at her car.

The parties had numerous conversations that night and the next day.  After plaintiff hung up on defendant, he sent her multiple text messages.  According to defendant, plaintiff never said defendant choked, punched, or assaulted her. Defendant denied he choked, punched, pushed, or performed any sexual acts on plaintiff or himself.  He admitted that he was aware plaintiff was pregnant on the day of the incident and that she believed that he was the father.

Defendant offered his mother's testimony to attack the credibility of plaintiff.  Defendant's mother testified regarding plaintiff's termination of her prior pregnancy by defendant.

Based on the parties' testimony and the evidence, the trial court issued an FRO on February 22, 2023.  In an oral opinion, the court noted at the outset the divergent testimony from the parties in assessing the credibility of the witnesses. The court found plaintiff credible based on the "appropriate eye contact" and the delivery of her testimony in a "concise and matter of fact manner."  The court found defendant less credible and discredited his testimony that he "gently moved" plaintiff off him.  The court noted defendant's mother's testimony failed to establish a pattern of false statements by plaintiff.

7

Relying on the two-prong test articulated in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the court found defendant committed the predicate act of assault. Citing N.J.S.A. 2C:12-1, the court found defendant committed simple assault because defendant "negligently caus[ed] bodily injury to another, or at the very least, attempt[ed] by physical menace to put another in fear of imminent serious bodily injury." The court found plaintiff proved assault based on evidence of bruising and her credible testimony.

The court noted that the issuance of an FRO is often perfunctory and self-evident when there is evidence of physical force. The court then concluded an FRO was appropriate based on the bruising and the choking of plaintiff.

## II.

On appeal, defendant raises three arguments. First, defendant contends that the trial court erred in admitting hearsay evidence and unauthenticated photographs, contentions he had not raised at trial. Second, he asserts that the court erred in finding by a preponderance of the evidence that defendant committed assault. Lastly, defendant argues the court failed to provide specific law supporting its decision.

Our review of an FRO issued after a bench trial is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "The general rule is that findings

by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Gnall v. Gnall, 222 N.J. 414, 428 (2015). We accord substantial deference to family judges' findings of fact because of their special expertise in family matters. Id. at 413. That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall, 222 N.J. at 428. We will "not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, "we owe no deference to a trial court's interpretation of the law, and review issues of law de novo." Cumberland Farms, Inc. v. N.J. Dep't of Envt'l Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

Domestic violence occurs when an adult or emancipated minor commits one or more acts on a person protected under the PDVA. N.J.S.A. 2C:25-19(a). When determining whether to grant an FRO, a trial judge must engage in a two-step analysis. Silver, 387 N.J. Super. at 125-26. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible

evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125; see also N.J.S.A. 2C:25-29(a) (providing that an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed"). Second, the court must determine that a restraining order is necessary to provide protection for the victim. Silver, 387 N.J. Super. at 126-27. As part of that second step, the judge must assess "'whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse.'" J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 127). Although the court is not required to incorporate all the factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 402 (omission in original) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).

Defendant contends the court erred in finding that he committed the predicate act of assault. We disagree. After hearing the parties' testimony, making credibility determinations, and applying the statute, the trial court found plaintiff proved that defendant committed simple assault. We are satisfied there

10

is ample evidence in the record that supports the trial court's finding of assault, and therefore, defendant's contention lacks merit.

We are also satisfied there was substantial credible evidence that plaintiff was in need of an FRO. In testimony that the trial court found credible, plaintiff stated she did not feel safe because defendant had threatened to hurt her and her family. That testimony, coupled with the finding of an assault, satisfied the need for a restraining order to protect plaintiff. While the trial court failed to evaluate all the factors in N.J.S.A. 25-29(a)(1) to (6), its finding concerning the second prong is sufficiently supported by the evidence at trial.

III.

Defendant also presents several evidentiary arguments for the first time on appeal. If an error has not been brought to the trial court's attention, an appellate court will not reverse on the ground of such error unless the appellant shows plain error: an error "clearly capable of producing an unjust result." R. 2:10-2. That possibility must be sufficiently real to raise a reasonable doubt as to whether the trial court as a factfinder reached a decision it otherwise would not have reached. State v. Bass, 224 N.J. 285, 308 (2016). An appellate court may properly "infer from the failure to object below that in the context of the

11

trial the error was actually of no moment." State v. Ingram, 196 N.J. 23, 43 (2008) (quoting State v. Nelson, 173 N.J. 417, 471 (2002)).

First, defendant asserts the trial court erred by "entirely" relying on photographs that were not marked for evidence nor moved into evidence. While defendant is correct neither photograph was moved into evidence, plaintiff's photograph of the bruised shoulder sustained on January 19 was marked for identification. Defendant's argument is unavailing. He did not object to the photographs or plaintiff's testimony regarding the photographs. We conclude the trial court did not commit plain error clearly in considering the photographs, which supported plaintiff's testimony regarding the assault on January 19.

Second, defendant argues the court erred when it admitted plaintiff's hearsay evidence regarding additional facts not alleged in the TRO and unauthenticated photographs. Specifically, defendant argues the court allowed plaintiff to testify about photographs she did not take or store, entered the photographs into evidence, and permitted plaintiff to expand the allegation of prior alleged domestic violence, including testimony regarding pictures of the alleged abuse that were not admitted into evidence. Defendant further argues the trial court impermissibly amended the TRO without notice. Defendant's contentions lack merit.

12

We defer to a trial court's evidentiary ruling absent an abuse of discretion. State v. Garcia, 245 N.J. 412, 430 (2021). We do so because "the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)).

We evaluate defendant's arguments after considering the applicable evidentiary rules. "[A] photograph is a 'writing,' N.J.R.E. 801(e), and, therefore, must be authenticated," but the authentication requirement embodied in N.J.R.E. 901 is "not designed to be onerous." State v. Hockett, 443 N.J. Super. 605, 613 (App. Div. 2016). Accordingly, "any person with the requisite knowledge of the facts represented in the photograph . . . may authenticate it." State v. Brown, 463 N.J. Super. 33, 52 (App. Div. 2020) (quoting State v. Wilson, 135 N.J. 4, 14 (1994)). In that regard, an authenticator must be able to "verify that the photograph accurately represents its subject." Wilson, 135 N.J. at 14.

In addition, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). Hearsay is deemed "untrustworthy and unreliable," State v. White, 158 N.J. 230, 238 (1999), and therefore, it is "not admissible except as provided by [the Rules of Evidence] or

13

by other law." N.J.R.E. 802. However, "if evidence is not offered for the truth of the matter asserted, the evidence is not hearsay, and no exception to the hearsay rule is necessary to introduce that evidence at trial." State v. Long, 173 N.J. 138, 152, (2002).

We reject defendant's argument that plaintiff's photographs were not properly authenticated. In a single photograph related to the January 19 incident, plaintiff testified regarding the bruise on her right shoulder to support the assault occurred on that date in defendant's car. Plaintiff described the photograph of her shoulder and testified it was taken by her mother on January 20. We are satisfied the photograph was properly authenticated.

We likewise reject defendant's argument that plaintiff's testimony regarding the photographs showing her bruised left arm taken two to three weeks before January 19. The record shows the trial court considered plaintiff's testimony regarding that photograph because it supported her testimony of prior domestic violence. The trial court sufficiently assessed plaintiff's testimony and the photographs in making its factual findings. Again, defendant offered no objection. We discern no basis to disturb the trial court's ruling because its findings were adequately supported by substantial, credible evidence contained in the record. See State v. Locurto, 157 N.J. 463, 472 (1999).

A-2056-22

Lastly, defendant's contention that the trial court permitted plaintiff to "ramble" concerning additional allegations not included in the TRO or any police report and did not state whether it considered that testimony. This argument is belied by the record. Following plaintiff's testimony that defendant installed a tracking application on her phone, had access to her phone, and that she had text messages and photographs that defendant "broke" her car, the court stated that it could not consider those allegations because the TRO only alleged assault and not harassment, criminal stalking, or criminal mischief. Based on our review of the record, the trial court properly limited its analysis to the allegation of assault as set forth in plaintiff's TRO.

To the extent we have not addressed any of defendant's remaining contentions, we conclude they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2056-22